Prather *et al. v.* The Western Union Telegraph Company *et al.*

---

No. 7598.

PRATHER ET AL. *v.* THE WESTERN UNION TELEGRAPH COMPANY ET AL.

RAILROAD COMPANY.—*Special Charter.— Width of Right of Way.—Estate Appropriated.— Construction of Railroad.—Telegraph Poles.*—The Jeffersonville Railroad Company was originally incorporated, under the name of "The Ohio and Indianapolis Railroad Company," by an act approved January 20th, 1846 (Local Laws 1846, p. 153). In section 14 of this act the company was " invested with all the rights and powers necessary for the construction and repair of a railroad from the town of Jeffersonville, near the falls of the Ohio, to the town of Columbus, in the county of Bartholomew, *not exceeding sixty feet wide,* with as many set of tracks as the president and directors may deem necessary." By an act approved January 15th, 1849, the corporate name of the company was changed to "The Jeffersonville Railroad Company," and for the purpose of constructing its road, with all desirable appendages, the company was " authorized to enter upon, take, and hold *in fee simple* all real estate and materials necessary for that purpose." Under its charter and the amendments thereof, the railroad company entered upon and took the plaintiffs' real estate and thereon constructed its line of railroad, in and before June, 1851, without any conveyance or gift thereof to the company, and without any claim or proceeding instituted by the owner of the land for the assessment of his damages. It does not appear that, at the time

of its appropriation of the plaintiffs' land, the company limited the width of such appropriation to a less width than sixty feet as allowed by its charter.   Upon the foregoing facts—

*Held,* that by its entry upon, and the construction of its road over and across, the lands of the plaintiffs' ancestor, the railroad company appropriated, took and held such lands, in fee simple, to the full width allowed, namely, "sixty feet wide."

*Held,* also, that it is competent for the railroad company, within the limits of such appropriation, to erect itself, or by contract with another company, such telegraph poles as are or may be necessary to the proper maintenance of a line of telegraph along the line of its railroad.

From the Bartholomew Circuit Court.

*F. T. Hord,* for appellants.

*S. Stansifer, T. A. Hendricks, C. Baker, A. W. Hendricks* and *O. B. Hord,* for appellees.

Howk, J.—This case is now before this court for the second time.   When it was first here, the opinion and judgment of this court are reported under the name of *Prather* v. *The Jeffersonville, Madison and Indianapolis Railroad Company et al.,* 52 Ind. 16.

The action was commenced by Reason W. Prather, as sole plaintiff, against the Western Union Telegraph Company, Martin Egan, John Brisbin, Horace Scott, Dillard Ricketts, and The Jeffersonville, Madison and Indianapolis Railroad Company as defendants.   In his complaint the said plaintiff alleged, in substance, that he was the owner in fee simple of certain real estate, particularly described, in Bartholomew county, Indiana; that, on the — day of ——, 1870, the said defendants, without right and wrongfully and unlawfully, entered upon the plaintiff's said real estate, and then and there, without right, chopped down and destroyed twelve growing trees thereon, for the purpose of clearing the way for planting telegraph poles and placing wires thereon to be used by said defendants for telegraphing purposes; and then and there dug large holes in said land, and placed therein about two hundred telegraph poles across the entire length of said land, for the purpose of acquiring a proprietary interest and ease-

ment in said land for telegraphing uses; that the said plaintiff then and there removed the said poles from his said land, and the defendants then and there put them back in his land, and he then and there removed said poles from his land seven different times, and as often as removed the defendants then and there followed and replaced them, until finally they set their poles in plaintiff's land and placed their wires thereon, for telegraphing purposes, in defiance of the plaintiff and over his objections; that prior thereto the said defendants never assessed, or caused to be assessed and tendered, nor had they since assessed or tendered, his damages for said attempted usurpation of his lands, and they threatened to replace said poles and wires as often as the same might be removed, and to continue said poles and wires thereon for the purpose of acquiring an easement in his land, and they also threatened to annoy and vex the plaintiff with criminal prosecutions if he should remove said poles and wires, so unlawfully placed on his land; that said poles and wires interrupted the plaintiff in the cultivation of his said lands, and his ingress and egress to and from the same, and the different parts thereof, and interfered with and prevented his comfortable enjoyment of his said lands; and that the continuation of said poles on his lands might and would create a multiplicity of suits, and continued and repeated litigation. Wherefore the plaintiff demanded judgment for $1,000, and that the defendants might be enjoined from continuing their poles on and their wires over the plaintiff's said lands, or to abate them and enjoin any future erection thereof, and for all proper relief.

After the cause was remanded from this court to the court below, the death of the plaintiff, Reason W. Prather, was suggested, and upon the supplemental complaint of the appellants, as the heirs at law and personal representatives of said decedent, and on their motion and with the agreement of the defendants, the court ordered that the action should thereafter proceed and continue, by and in the names of the appellants, as the plaintiffs therein. Thereupon the appellees, the defend-

ants below, with leave of the court, withdrew their answers theretofore filed, and then filed a new and substituted answer in four paragraphs. To each of these paragraphs of answer the appellants demurred upon the ground that it did not state facts sufficient to constitute a defence to their action. These demurrers were severally overruled by the court, and to each of these rulings the appellants excepted. They failed and refused to reply to said answer, and the court rendered judgment against them, that they take nothing by their suit, and for the appellees' costs.

Errors are assigned by the appellants in this court, which call in question the several decisions of the circuit court in overruling their demurrers, for the want of sufficient facts, to each of the paragraphs of the appellees' answer.

In their argument of this cause in this court, the counsel on both sides, and especially the appellants' counsel, have discussed together all the questions arising under each of the alleged errors. In considering these questions, and in determining the sufficiency of each of the paragraphs of the appellees' answer, we shall, to some extent at least, in this opinion, follow the arguments of counsel and decide together, as far as we can, the several questions presented in regard to the sufficiency or insufficiency of the facts stated, in each of the paragraphs of the appellees' answer, to constitute a defence to the appellants' action. We deem it necessary, therefore, to the proper presentation and decision of these questions, that we should first give the substance, at least, of the facts alleged by the appellees in each of the paragraphs of their answer, which we now do accordingly.

In the first paragraph of their answer the appellees, the defendants below, jointly answered as follows: "1st. That The Jeffersonville Railroad Company was a corporation duly created and chartered by the Legislature of the State of Indiana, by an act approved January 20th, 1846, entitled 'An act to incorporate The Ohio and Indianapolis Railroad Company,' and the several acts amendatory thereof and supplemental

Prather *et al. v.* The Western Union Telegraph Company *et al.*

thereto, and by said charter and amendments was authorized to construct and operate a railroad from the city of Jeffersonville, Indiana, to the city of Indianapolis, Indiana, through and into the counties of Clark, Scott, Jackson, Bartholomew, Johnson and Marion; and in the month of June, 1851, the said railroad company, having previously located its road upon, over and through the said land of the plaintiff in the complaint mentioned, did, pursuant to the powers conferred upon it by its said charter and amendments thereto, for the purpose of constructing its said road with all desirable appendages, and for putting and keeping the same in repair, and for doing all proper business thereon, enter upon and take in fee simple a portion of said land, to wit, a strip thereof upon, over and through the same sixty feet in width, being thirty feet on each side of the center line of its track across said land, doing no unnecessary damage; that immediately thereafter said railroad company proceeded to construct and did construct its road upon said right of way in the center thereof, and continuously since said railroad company and its successors hereinafter mentioned have possessed and held in fee simple the said land so taken and appropriated.

"Defendants aver that neither said Reason W. Prather nor said plaintiff did, within two years from the time of such entry and appropriation, nor at any time since, file a claim for damages on account of such entry and appropriation, or select an appraiser or take any proceedings whatever for the assessment, appraisal, or ascertainment of damages, if any, by reason of said entry and appropriation of said land.

"And defendants further aver that all the said supposed trespasses in the complaint mentioned were done in and upon the said land so taken and appropriated, and *not elsewhere.*

"And said railroad was constructed from said Jeffersonville to the town of Edinburg, in Johnson county, equipped and operated by said Jeffersonville Railroad Company, until the — day of April, 1866, when said corporation and the Indianapolis and Madison Railroad Company, a corporation created

as aforesaid, and owning and operating a railroad from Madison, Indiana, through said Edinburg to said Indianapolis, by proper articles of consolidation, consolidated and became one corporation, by the name of the defendant, The Jeffersonville, Madison and Indianapolis Railroad Company, whereby the said last named corporation became and was and is the owner of all the property, rights and franchises of said two corporations, including said road and the right of way thereof over the real estate herein mentioned.

" The defendants further aver that, in order to insure safety and despatch in the transaction of its business, said last named railroad company has, ever since the year 1869, used the telegraph, having telegraph offices at all the various stations of said roads along the lines thereof, whereby the business of the road is greatly facilitated and the interests of the travelling and shipping public greatly subserved, and the trains thereon are and have been all the time run by telegraph, which is essential to secure the proper speed and safety of trains. In order to secure such telegraph facilities the said last named railroad company, on the — day of November, 1869, entered into an agreement with the defendant, the said telegraph company, which is still in force, whereby, in consideration that said railroad company would furnish the right of way for telegraph poles and lines along said railroads, over the right of way of said railroad company, said telegraph company would construct and keep in repair telegraph lines along said roads, and furnish one telegraph wire for the exclusive use of said railroad company, and, in pursuance of said agreement, said telegraph company constructed telegraph lines along the whole length of said roads over and upon the right of way of said railroad company, and furnished one wire for the use of said railroad company, which has been and is used for the purpose aforesaid.

"And it was in the construction and repairs of said telegraph line over the real estate described in the complaint, that the acts complained of were done, the defendants, other than said

two corporations, acting as the agents of said telegraph company, to do and perform said work, and not otherwise, and no act was done or performed other than was necessary to clear the way for and erect and maintain said telegraph line on said real estate, which was located and constructed where it still remains, on the right of way of said railroad company, at a distance of twenty-nine feet from the center of said railroad track; and defendants aver that said telegraph poles were planted at said distance from said railroad track by the order and direction of said railroad company, in order, as it was necessary so to do, to prevent the obstruction of said road, and the damage and accidents incident thereto by the falling or the blowing down of said poles by winds and storms, the poles being of a length that if thrown in the direction of the track they will not reach the same."

The second paragraph of the appellees' answer contains, substantially, the same general allegations of facts as are set forth and contained in the first paragraph thereof, *except* the allegations in regard to the acquisition, taking or appropriation, by the Jeffersonville Railroad Company, of the right of way for its line of railroad. These allegations of fact, in the second paragraph of answer, were as follows: "That after its organization said railroad company, by its proper officers, determined to acquire, for the purposes of its said road, a right of way of the width of sixty feet, upon which to construct and operate its said road; that it did accordingly proceed to acquire from the respective owners of the lands to be traversed by its said road, either by agreement and voluntary grant or by legal appropriation, pursuant to the powers vested in it by its said charter and amendments, a right of way sixty feet wide, for the purposes aforesaid; that the same was and is necessary to the convenient and successful use and operation of said road; that said road was so constructed with said width of way (except through towns and cities) from the city of Jeffersonville, Indiana, to the city of Edinburg, Indiana, through the counties of Clark, Scott, Jackson, Bartholomew and John-

son; that in, to wit, the month of June, 1851, the said rail-road, in the course of the construction of its said road between the said city of Jeffersonville and the city of Columbus in said Bartholomew county, having previously located the route of its said road upon, over and through the said lands in the complaint mentioned, the same being then owned by the plaintiffs' ancestor, said Reason W. Prather, did, pursuant to the powers conferred upon it by its said charter and amendments, for the purpose of constructing its said road with all desirable appendages, and for putting and keeping the same in repair, and for doing all proper business thereon, and for the purpose and with the intent of taking and appropriating, pursuant to said charter and amendments, a right of way in fee simple for said road upon, over and through said lands, of said width of sixty feet, enter upon and take and appropriate in fee simple such right of way upon, over and through said lands, and thereupon did build and construct its said railroad upon the center line thereof, and that it and its said successor company has, continuously since that time, possessed, maintained and used said railroad so located and built, and upon the same line and place, and that continuously since that time it has possessed said right of way under claim of exclusive right thereto."

In the third paragraph of their answer the appellees alleged in substance the same general facts in regard to the incorporation of the Jeffersonville Railroad Company, the location and construction of its line of railroad from Jeffersonville to Edinburg, passing through and over the land of said Reason W. Prather, in the complaint mentioned, and the subsequent consolidation of that company with the Indianapolis and Madison Railroad Company, thus constituting and creating the new corporation, The Jeffersonville, Madison and Indianapolis Railroad Company, one of the appellees herein, as those alleged in the preceding paragraphs; but the averments of the third paragraph, in regard to the extent and manner of the appropriation, by the Jeffersonville Railroad Company, of the right of way for its line of railroad, differ so much from the alle-

gations of the preceding paragraphs, on the same subject, as to make it necessary for us to set out these averments in this opinion. They were, in substance, as follows:

"And in the month of June, 1851, said railroad company was constructing said railroad as aforesaid, under and in pursuance of the authority aforesaid, and having previously so appropriated and located said road sixty feet wide, entered upon and constructed said railroad upon and over the real estate described in the complaint, doing no unnecessary injury or damages, which was then the property of said Reason W. Prather, and so continued until his death ; and said Prather made no claim or demand whatever for damages or compensation for said appropriation of said property within two years thereafter, nor did he thereafter make any such claim or demand. Said real estate is situated between Jeffersonville and Columbus, Indiana, and, at the time said appropriation was made as aforesaid, said Reason W. Prather was a person of sound mind, over the age of twenty-one years, and resided, and continued to reside, until this action was commenced, on the real estate described in said complaint. And no agreement was ever had or attempted to be made between said parties for compensation to, and damages sustained by, said Prather, if any, for and on account of said appropriation, nor was any application ever made by either of said parties to any justice of the peace of said county, or other officer or authority for a jury or arbitrators to assess said Prather's compensation and damages aforesaid. Defendants say that the width of the right of way of said road over said real estate was, and is, by virtue of said appropriation, location, and said charter and amendments, sixty feet, and by said appropriation said railroad acquired a right of way for said road over said real estate sixty feet wide, for the then and subsequent proper uses of said company and the owners and operators of said road, such as they from time to time should deem necessary for the purposes of making and maintaining all necessary repairs, improvements and fences, and to insure speed and safety in the

transit of trains over said road. And in order to securely fence in the track of said railroad, and properly maintain the fencing as required by law, it is necessary to have sufficient space and room for the erection and repairs thereof, and for the necessary repairs of said road, and to prevent the injury and destruction of the fencing by fires communicated by and from locomotives passing over said road, to erect and maintain said fencing, on both sides of the track, a distance of not less than twenty-nine feet from the center of said railroad track. The track of said road was constructed over and upon the center of said right of way through said real estate, where it still remains." And " the defendants say that in order to insure dispatch and safety in the transaction of the business of said railroad, the companies aforesaid owning and operating the same have ever since, to wit, 1853, and as soon after the road was completed as said improvements were needed and could be conveniently made, used the telegraph, having a telegraph line, instruments and operators at all the principal stations of said road, whereby the business thereof is greatly facilitated and the interest of the travelling and shipping public greatly subserved; that the trains thereon are, and have been ever since 1853, run by telegraph, which is essential in order to secure the proper speed and safety of trains. In order to secure such telegraph facilities, the said first named railroad company in 1854 entered into an agreement with the defendant, The Western Union Telegraph Company, whereby said telegraph company, in consideration that said railroad company would furnish the right of way for telegraph poles and lines along said road over the right of way of said railroad company, said telegraph company would construct and keep in repair a telegraph line along said road, and furnish one telegraph wire for the exclusive use of said railroad company. Said telegraph line was constructed on the east side of said railroad track, the telegraph poles being planted at a distance of, to wit, twenty feet therefrom, and they were so planted over said real estate, and so used without objection on

the part of said Reason W. Prather until the change thereof hereinafter mentioned. And defendants further say that the United States Telegraph Company, in the year, to wit, 1856, by and with the consent of said railroad company, constructed and operated a telegraph line along the west side of said railroad track, at a distance of twenty feet from the center of said railroad track, on the lands described in the complaint, and within sixty feet, until the year, to wit, 1869, all without objection on the part of said Prather. The poles of said line on the east side of said track were of a length and height necessary, and no more, to protect the telegraph wires from injuries and obstructions, but they were of a length and height that when thrown down by winds and storms, or otherwise, in the direction of said railroad track, that they would and did fall upon and across said track, thus endangering the lives of the travelling public, and obstructing and delaying the business of the road. It therefore became necessary, in order to avoid such dangers and delays, to set the telegraph poles a distance from the railroad track sufficient to avoid the recurrence of such casualties. After the consolidation as aforesaid of said two railroad companies, said Jeffersonville, Madison and Indianapolis Railroad Company renewed said contract and agreement with said telegraph company, and it was in repairing said telegraph line over the real estate described in the complaint, that the acts complained of were done, the defendants, other than said telegraph company, acting as the agents and employees of said telegraph company to do and perform said work, and not otherwise. And no act was done other than was necessary to clear the way for, and erect and maintain said telegraph line over said real estate, and said telegraph poles were planted where they now stand, on the right of way of said railroad company, over said real estate a distance of twenty-nine feet from the center of said railroad track. And defendants aver that said poles were planted at said distance from said track by the order and direction of said railroad company, in order, as it was necessary so to do,

to prevent the obstruction of said road, and the accidents and damages incident thereto of the falling or blowing down of said poles by winds and storms, and the poles were of a length, and not less than that if thrown in the direction of the railroad track they would not reach it, and it was necessary to have said poles of such length in order to protect the telegraph wires from injuries and obstructions. It is averred that no record was made or kept of said appropriation, or of the quantity or location of the land appropriated, or, if any was made, the same has been destroyed, and can not be found, or the contents of it be ascertained."

The fourth paragraph of appellees' answer does not differ materially from the preceding paragraphs, in so far as the general averments of facts are concerned, but only as to the allegations in regard to the manner and extent of the appropriation by the railroad company for the right of way of its line of railroad. In this regard, the allegations of the fourth paragraph of answer were, in substance, as follows:

"And in the month of June, 1851, said railroad company, then constructing said railroad as aforesaid, entered upon, located and constructed said railroad upon and over the real estate described in the complaint, which was then the property of said Reason W. Prather, and so continued until his death. And said Prather made no claim or demand whatever for damages or compensation for said appropriation of said property within two years thereafter, nor did he thereafter make any such claim or demand. Said real estate is situated between Jeffersonville and Columbus, Indiana, and at the time when said appropriation was made as aforesaid, said Reason W. Prather was a person of sound mind, over the age of twenty-one years, and resided and continued to reside on said real estate described in said complaint until this action was commenced, and no agreement was ever had or attempted to be made between said parties for compensation and damages sustained by Prather for and on account of said appropriation, nor was any application ever made by either party

to any justice of the peace of said county or any other officer or authority for a jury or arbitrators to assess said Prather's damages and compensation aforesaid. The defendants say that the width of the right of way of said railroad over said real estate was and is sixty feet by virtue of said location and construction of said road and said charter and amendments, and said company thereby acquired a road and right of way over said real estate sixty feet wide—the track of the road was constructed on the center thereof, where it still remains."

In each of the paragraphs of appellees' answer, and upon the appellants' demurrers thereto, for the alleged want of sufficient facts therein, questions are presented which manifestly depend for their proper decision upon the construction to be placed upon the rights, privileges and franchises conferred upon the appellee, the railroad company, under the laws of this State, which constituted the charter of the Jeffersonville Railroad Company. These questions may be briefly stated as follows:

1. What is the width of the right of way acquired by the Jeffersonville Railroad Company?

2. What estate did the company acquire in its right of way? Was it an estate in fee simple, or an easement merely? And,

3. If the estate was a mere easement, could the company itself, or by contract with its codefendant, lawfully erect telegraph poles within the width of such easement?

The Jeffersonville Railroad Company was incorporated under the corporate name of "The Ohio and Indianapolis Railroad Company," by an act approved January 20th, 1846. Local Laws 1846, p. 153. Of this act we will set out in this connection so much as has any bearing upon the questions for decision in this case, in substance, as follows:

Sections 14 and 15 of the original charter (Local Laws 1846, pages 156 and 157):

"Sec. 14. That the president and directors of said company

shall be, and they are hereby invested with all the rights and powers necessary for the construction and repair of a railroad from the town of Jeffersonville, near the falls of the Ohio, to the town of Columbus, in the county of Bartholomew, not exceeding sixty feet wide, with as many set of tracks as the said president and directors may deem necessary; and that they may cause to be made, or contract with others for making said railroad or any part of it, and they, their agents or those with whom they may contract for making any part of the same, or their agents may enter upon and use and excavate any land which may be wanted for the site of said road, or the erection of warehouses or other works necessary to said road, or for any other purpose necessary or useful in the construction or repair of said road, or its works; and that they may build bridges, provided the same do not obstruct the navigation on navigable streams; may fix scales and weights; may lay rails; may take and use any earth, timber, gravel, stone, or other materials which may be wanted for the construction or repair of said road or any part of its works, and may make and construct all works whatsoever, which may be necessary and expedient, in order to the proper completion of said road.

"Sec. 15. That the president and directors of said company, or a majority of them, or any person or persons authorized by a majority of them, may agree with the owner or owners of any land, earth, timber, gravel, or stone, or other materials, or any improvements which may be wanted for the construction or repair of any of said road, or any of their works, for the purchase, or use and occupation of the same; and if they can not agree, and if the owner or owners of any of them be a *feme covert,* under age, *non compos mentis,* or out of the county in which the property wanted may lie, when such land or materials shall be wanted, application may be made to any justice of the peace in the county where such land or materials shall lie, who shall thereupon issue his warrant, under his hand and seal, directed to the sheriff of said county, requiring him to summon a jury

of twenty inhabitants of said county, not related or in any wise interested, to meet on the land or near to the other property or materials to be valued, on a day named in said warrant, not less than ten nor more than twenty days after the issuing of the same; and if at said time and place, any of said jurors summoned do not attend, the said sheriff shall summon, immediately, as many jurors as may be necessary with the jurors in attendance, to furnish a panel of twenty jurors in attendance; and from them each party, its, his, or her, or their agent, if either be not present in person or by agent, then the sheriff, for it, him, or her, may strike off four jurors, and the remaining shall act as the jury of inquest of damages; and before they act as such, the said sheriff shall administer to each of them an oath, or affirmation as the case may be, that he will justly and impartially value the damages which the owner or owners will sustain, by the use or occupation of the land, materials or other property required by the company; and the jury estimating such damages, shall take into the estimate the benefit resulting to the owner or owners from the construction of the said railroad through, along or over the property of said owner or owners; but only in extinguishment of the claim for damages; and the jury shall reduce their inquisition to writing and shall sign and seal the same, and it shall then be returned by the said sheriff to the clerk of the circuit court of his county, and by such clerk filed in his office, and shall be confirmed by the circuit court of said county at its next session, if not sufficient cause to the contrary be shown; and when confirmed shall be recorded by said clerk, at the expense of said company; but if set aside by said court, for good cause shown, the said court shall direct another inquisition to be taken in the same manner as above prescribed; and such inquisition shall describe the property taken or the bounds of the land condemned; and the quantity or duration of the interest of the owner or owners in the same, valued for the company; and such valuation, when paid or tendered to the owner or owners of said property, or his, or her, or their legal

representative, shall entitle the said company to the estate and interest in the same, thus valued, as full, as if it had been conveyed by the owner or owners of the same; and the valuation if not received when tendered, may at any time thereafter be received from the company, without cost, by the owner or owners, his, her, or their legal representative or representatives."

On the 8th day of February, 1848, an act became a law, without the approval of the Governor, amendatory of the aforesaid act of January 20th, 1846.   Local Laws 1848, p. 479.

The third section of this act of 1848 is as follows:

"Sec. 3.  For the purpose of constructing the work authorized by this act and the act to which this is amendatory, said company shall have and enjoy all the powers and rights conferred upon the State, and be subject to all the liabilities on her imposed by an act entitled 'an act to provide for a general system of internal improvement,' approved January 27th, 1836, and shall have all the rights, privileges, and franchises granted to certain associations by an act entitled 'an act to provide for the continuance of the construction of all or any part of the public works of this State by private companies, and for abolishing the Board of Internal Improvement, and the offices of Fund Commissioner and Chief Engineer,' approved January 28th, 1842."

On the 15th day of January, 1849, another act was approved, amendatory of the charter of the Ohio and Indianapolis Railroad Company, and changing its corporate name to "The Jeffersonville Railroad Company."   Of this act we set out the following sections:

"Section 1.  *Be it enacted by the General Assembly of the State of Indiana,* That the name and style of the Ohio and Indianapolis Railroad Company, be and the same is hereby changed, and said company shall hereafter be known by the name and style of the Jeffersonville Railroad Company, and by said new name shall have and possess all the rights, privileges, and franchises granted, and be subject to all the

liabilities imposed by an act to incorporate the Ohio and Indianapolis Railroad Company, approved January 20, 1846, as such rights, privileges, franchises, and liabilities would have existed had the name and style of said company not been changed.

"Sec. 3. It shall be lawful for said railroad company to take, hold, sell, and convey any and all lands and tenements which may be conveyed or granted or released to said company for the purpose of constructing and keeping in repair the work authorized by the act incorporating the Ohio and Indianapolis Railroad Company, referred to in the first section of this act: *Provided,* Such company shall within ten years from such grant or conveyance, sell or dispose of all such lands as may be so granted, conveyed, or released; except so much as may be embraced in the width of the road allowed by charter and for depot grounds and water stations for said road, and an additional amount not exceeding three thousand acres which said company may retain and possess for the purpose of supplying timber and stone for the construction and use of said road.

"Sec. 5. For the purpose of constructing said road with all desirable appendages, and for putting and keeping the same in repair and for doing all proper business thereon, said company are hereby authorized to enter upon, take, and hold in fee simple all real estate and materials necessary for that purpose, doing no unnecessary damage, and when such real estate or materials can not be had by donation or fair purchase, the owner may file his claim for damages in the office of the secretary of the company, and select an arbitrator, whereupon the company shall select another, and these two a third, who shall be disinterested men, and within a reasonable time, having been sworn, they shall proceed to examine the case and make out and file their award in the premises with said secretary, from which award either party may appeal to the circuit court of the county where the secretary keeps his office; which appeal shall be in all things, regulated and tried as ap-

peals are from the judgment of a justice of the peace in this State; said secretary being regarded as such justice in this behalf, and whenever [any] real estate is so taken or is damaged, the arbitrators, court, or jury trying the case shall estimate any and all advantages said road may be to the other real estate of the claimant adjacent or contiguous to that taken, deduct such advantages from the damage done, and find for the claimant the balance only, if any there be, if there be none the claimant shall pay all costs, if damage be recovered the company shall pay the cost, and that all claims for damages shall cease unless applied for in two years next after the property shall have been taken possession of by said company."

In the 4th section of the act of December 29th, 1849, the General Assembly prescribed and declared, as a rule of construction, that "This act and the acts and amendments heretofore passed incorporating said company shall be deemed public acts, and shall be favorably construed for all beneficial purposes." Local Laws 1850, p. 424.

With the foregoing summary of the pleadings in this cause, and the quotations of the statutes of this State which govern and control the questions we are required to decide, we proceed now to their consideration and decision. It will be observed that the original act of January 20th, 1846, and the amendments thereof, in 1848, 1849 and 1850, had all been passed prior to the entry of the Jeffersonville Railroad Company upon, and its appropriation of, the real estate of the appellants in June, 1851. The original and amendatory acts were passed, and the appropriation was made while the Constitution of 1816 was yet the fundamental law of this State, and before the taking effect of the Constitution of 1851. In section 7, of article 1, of the Constitution of 1816, in force at the time, it was provided as follows: "That no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without a just compensation being made therefor." Under this con-

stitutional provision it was held by this court that private property might be taken for, and applied to, a public use, before making compensation therefor. *Rubottom* v. *McClure,* 4 Blackf. 505; *Hankins* v. *Lawrence,* 8 Blackf. 266; *McCormick* v. *President, etc.,* 1 Ind. 48.

The right of eminent domain, the right to take property, public or private, and apply the same to public use, is an inherent right in the State government. The exercise of this right, the power to authorize, control and direct its exercise, is vested in the General Assembly, subject to no restrictions or limitations, except such as were or are imposed by the fundamental law, State or Federal. In *Water Works Co.* v. *Burkhart,* 41 Ind. 364, in speaking of the right of eminent domain, it was said: "It is not conferred, but limited by the constitution. The limitation does not relate to the amount of the estate in property to be taken." The only limitations, as well under the constitution of 1851 as under the constitution of 1816, were that a just compensation should be made for the property taken, and this compensation under the later constitution, except in case of the State, was to be "first assessed and tendered." The validity or constitutionality of the legislation above quoted, under which the Jeffersonville Railroad Company entered upon, took and held the real estate of the appellants' ancestor, can not therefore be questioned; nor can it be questioned, as it seems to us, that such real estate was so taken and held in fee simple, and not merely as an easement therein. The difficult question for determination, in this case, is the width of the strip of land so taken and held by the railroad company in fee simple, by its action in entering upon, and constructing its line of railway over and through, the real estate of the appellants' ancestor. Of this question, when the case was here before, the court said:

"If the company had taken possession of and occupied sixty feet in width, there can be no doubt that she would have acquired title to the whole of the strip so occupied; but having appropriated and used less than sixty feet, the extent

of her right must be limited by her necessities to the extent that she had possessed, occupied and used the same.

"On the other hand," the court said, "it is contended by counsel for appellant that the company appropriated and took possession of only so much of his land as is actually occupied by the track of said road, being about four feet in width, and the space occupied on the west side of said track by telegraph poles, which were set nineteen feet from the center of said track, and had been maintained there from the construction of said road until the grievances complained of in the complaint were committed; in other words, that the only right which the company acquired in and to the appellant's land was to that portion actually possessed, occupied and appropriated by said company prior to and at the time of the consolidation of said companies, and that no more passed to such new corporation. The position assumed by counsel for appellant is as untenable as that taken by counsel for appellee, and can not be maintained." The position taken by counsel for the railway company was, "that by entering upon and constructing her road-bed over such lands, she acquired a strip of land sixty feet wide."

In the enactment of the several statutes, which constituted the charter of the Jeffersonville Railroad Company, at the time it entered upon and constructed its road-bed over the lands of appellants' ancestor, in June, 1851, what limit did the Legislature impose, or intend to impose, upon the width of its line of railroad? By section 14, above quoted, of its original charter, the company was " invested with all the rights and powers necessary for the construction and repair of a railroad from the town of Jeffersonville, near the falls of the Ohio, to the town of Columbus, in the county of Bartholomew, not exceeding sixty feet wide, with as many set of tracks as the said president and directors may deem necessary; * * * * and they, their agents or those with whom they may contract for making any part of the same or their agents may enter upon and use and excavate any land which may be wanted for the

site of said road, or the erection of warehouses or other works necessary to said road, or for any other purpose necessary or useful in the construction or repair of ‵ ‶id road, or its works," etc.

In the third section, above quoted, of the amendatory act of February 8th, 1848, it was declared that "For the purpose of constructing the work authorized by this act and the act to which this is amendatory, said company shall have and enjoy all the powers and rights conferred upon the State, and be subject to all the liabilities on her imposed by an act entitled 'an act to provide for a general system of internal improvement,' approved January 27, 1836, and shall have all the rights, privileges, and franchises granted to certain associations," by the act of January 28th, 1842, "to provide for the continuance of the construction of all or any part of the public works of this State by private companies," etc.

In section 5, above quoted, of the amendatory act of December 29th, 1849, it was provided that "For the purpose of constructing said road with all desirable appendages, and for putting and keeping the same in repair and for doing all proper business thereon, said company are hereby authorized to enter upon, take, and hold in fee simple all real estate and materials necessary for that purpose, doing no unnecessary damage." Under section 3, above quoted, of the last amendatory act, it was declared to "be lawful for said railroad company to take, hold, sell, and convey any and all lands and tenements which may be conveyed or granted or released to said company for the purpose of constructing and keeping in repair the work authorized by the act incorporating the Ohio and Indianapolis Railroad Company, referred to in the 1st section of this act: *Provided,* Such company shall within ten years from such grant or conveyance, sell or dispose of all such lands as may be so granted, conveyed or released; except so much as may be embraced in the width of the road allowed by charter," etc.

Construing together these provisions of the charter of The

.Jeffersonville Railroad Company, all of which were in force at the time it entered upon and constructed its road-bed over the lands of Reason W. Prather, in June, 1851, we are of opinion that the company, by such entry and construction, acquired, took and held, in fee simple, the full width of the road allowed by such charter over, through and across such lands, namely, "sixty feet wide," and no more, and, certainly, no less. It was competent, no doubt, for the railroad company to limit the width of its appropriation of lands, under the right of eminent domain so liberally delegated to it by the General Assembly in its charter, to less than sixty feet; but, where no such limitation affirmatively appeared, and the width of its appropriation was shown only by its entry upon and the construction of its road over and through such lands, it must be held, we think, that such width was the full width allowed by its charter, namely, "sixty feet wide." This was the width which the Legislature fixed and determined upon as the proper and necessary width of the contemplated railroad, authorizing the company, however, in the prosecution of its enterprise, to enter upon, take and hold in fee simple real estate of a less width than sixty feet, if its president and directors might deem such action necessary.

When the Jeffersonville Railroad Company was incorporated the State was just beginning to recover from the disastrous results of its system of internal improvements. Its railroad enterprises were yet in their infancy, and many of the railroads, which have since contributed so largely to the general prosperity and material wealth of the State, were then not even contemplated. The legislative policy of the State was to promote the construction of railroads by private corporations, and to grant them liberal rights, privileges and franchises, and thereby encourage the investment therein of private capital. Such was the policy, doubtless, which prompted the enactment of the several statutes, which, in June, 1851, constituted the charter of the Jeffersonville Railroad Company. This policy, also, it may well be supposed, induced the Leg-

islature to declare, as a rule of construction, that the several acts, original and amendatory, " incorporating said company shall be deemed public acts, and shall be favorably construed for all beneficial purposes." With this rule in view, we are clearly of the opinion that we have reached the right conclusion in regard to the width of the appropriation of the lands of Reason W. Prather, upon the facts alleged in each paragraph of the appellees' answer.

In *Inhabitants of Worcester* v. *Western R. R. Corp.*, 4 Met. (Mass.) 564, it appeared that the charter of the railroad company provided for a road " not exceeding five rods wide." Of this provision the court says :

" To the extent of five rods, it appears to us that the Legislature intended that the franchise of this corporation should extend, for 'any and all purposes incident to the object of its creation. * * * No doubt, in practice, the main use of the strip of land of five rods in width, in the greater part of its extent, will be for sustaining the track for the trains to pass over. But such restriction of its use is not found in the act, and therefore when the corporation have occasion to use any part of such strip of five rods for any of the purposes-incident to their creation, it is within their franchise ; and being used to promote the purposes contemplated by the act, it is exempted from taxation, as property appropriated to public use. This is the extent to which they are authorized to *take* land without the consent of the owner, and this therefore, we think, is the extent to which the law regards the land as appropriated to public use."

In *Babcock* v. *Western R. R. Corp.*, 9 Met. 553 (43 Am. Dec. 411), it appeared that the railroad company was authorized by its charter to lay out its road, not exceeding five rods wide ; that Babcock had granted the company full and free license and authority to locate, construct and repair its road upon and over his lands, and to take to the extent authorized by their charter ; and that subsequently the company had gone upon Babcock's lands, outside of the granted limits, to widen

and deepen a ditch or drain to secure its railroad from damage. Babcock sued the railroad company for the alleged trespass, and it was held that he could not maintain the action. The court said :

"It is a general rule, we think, that a grant of power to accomplish any particular enterprise, and especially one of a public nature, carries with it, so far as the grantor's own power extends, an authority to do all that is necessary to accomplish the principal object. The court are therefore strongly inclined to the opinion that under the act of incorporation, * * * and the general laws respecting the establishing of railroads, the corporation had the authority in question, independently of plaintiff's deed." And the court further said : " It is a well known and reasonable rule, in construing a grant, that * all means to attain it, and all the fruits and effects of it, are granted also." See, also, *Brainard* v. *Clapp*, 10 Cush. 6.

In the case at bar, we think that the Legislature, in the original charter, fixed the width of the railroad when taken by the right of eminent domain, delegated to the railroad company, at the width of sixty feet over and through the lands of appellants' ancestor.

In *People* v. *Smith*, 21 N. Y. 595, the court said :

"The necessity for appropriating private property for the use of the public or of the Government is not a judicial question. The power resides in the Legislature. It may be exercised by means of a statute which shall at once designate the property to be appropriated and the purpose of the appropriation ; or it may be delegated to public officers, or, as it has been repeatedly held, to private corporations established to carry on enterprises in which the public are interested. There is no restraint upon the power, except that requiring compensation to be made. * * The exercise of the right of eminent domain stands on the same ground with the power of taxation. Both are emanations of the law-making power. They are the attributes of political sovereignty, for the exercise of which the Legislature is under no necessity to address itself

to the courts. In imposing a tax or in appropriating the property of a citizen, or a class of citizens, for a public purpose, with a proper provision for compensation, the legislative act is itself due process of law."

When, therefore, the purpose and extent of the appropriation were clearly designated by the Legislature, as in the case in hand, that was decisive both of the necessity and of the extent of the appropriation, and the courts could neither extend nor limit, in such case, the purpose or extent of such appropriation. *United States* v. *Harris*, 1 Sumner, 21; *Water Works Co.* v. *Burkhart, supra; Nelson* v. *Fleming*, 56 Ind. 310. If Reason W. Prather had instituted the proper proceeding within the proper time, to have his damages assessed for the appropriation of his lands by the Jeffersonville Railroad Company, in June, 1851, it seems clear to us that upon the facts stated in either paragraph of appellees' answer, the railroad company could not have successfully claimed, in such proceeding, that the width of its appropriation was less than sixty feet. It might have limited its appropriation at the time it was made to a width less than sixty feet, but, not having done so, it must be conclusively presumed, we think, that by its entry upon, and its construction of its road over and through, the lands of Prather, the railroad company appropriated, took and held such lands to the full width allowed by its charter, namely, " sixty feet wide." The title thus acquired, taken and held by the Jeffersonville Railroad Company to the land, within the limits of its appropriation, was, under its charter, a title in fee simple, and the land under such title passed to and vested in the consolidated company, namely, The Jeffersonville, Madison and Indianapolis Railroad Company. Of course it was competent for the consolidated company, so owning and holding the land so appropriated, within the limits thereof, to erect itself or by contract with its coappellee, The Western Union Telegraph Company, such telegraph poles as were necessary to the proper maintenance of a

line of telegraph along the line of its railroad, or to do any other lawful act.

For the reasons given we are of opinion that the court committed no error in overruling the appellants' demurrers to the several paragraphs of the appellees' answer, or either of them.

The judgment is affirmed, with costs.