CEDAR RAPIDS CANNING COMPANY, Appellant, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY.

**Railroads:** RIGHT OF WAY: PRESUMPTION AS TO WIDTH: EVIDENCE. In the absence of proof to the contrary a railway company will be presumed to have appropriated a right of way of the maximum statutory width, but this presumption simply casts the burden on one asserting the contrary and may be overcome by evidence rebutting the inference.

*Appeal from Linn District Court.* —HON. W. N. TREICHLER, Judge.

WEDNESDAY, MAY 27, 1903.

ACTION to quiet title to a strip of land. Defendant claimed it as a part of its right of way. On hearing, the petition was dismissed, and plaintiff appeals.—*Reversed.*

*Redmond & Stewart* for appellant.

*J. C. Leonard, S. K. Tracy, Carroll Wright* and *John I. Dille* for appellee.

LADD, J.—This is a controversy concerning a strip of land about twenty feet wide and two hundred feet long. It is either a part of defendant's right of way, or of land fenced in by plaintiff. The defendant's railroad was built in 1871. In October, 1872, one Hull conveyed the adjacent land to the Star Wagon Company. This land was measured and staked out, and, as described in the deed, extended to within about thirty feet east from the center of defendant's main track, though the west boundary was mentioned as the right of way. The plaintiff claims under the wagon company, through mesne conveyances, with practically the same descriptions. In the summer of 1874 the wagon company erected a tight board fence, eight feet high, on the line supposed by it to be the boundary between the land purchased from Hull and the right of way; the same being a part of the inclosure about all its ground and works. This remained until about three years before the trial, when it was replaced by a new one of like description. In April, 1901, plaintiff was about to construct a warehouse near the fence, when it was advised that the defendant claimed that its right of way extended fifty feet from the center of the main track, as originally located; and on the same night a side track farther east on plaintiff's premises was removed to the disputed strip, and covered with cars. The only evidence of title introduced

by defendant was a deed dated February 11, 1874, from Hull to defendant's predecessor, of "a strip of land fifty feet in width on each side of the center line of said railroad as now definitely located over and across that part of the tract of land conveyed by Myron L. Pardee, executor of L. B. Crocker and John Bertram, to said Hull," and another from John Bertram to Hull, dated December 26, 1872, describing land including this, "except that the Chicago & Northwestern Railway Company and the Burlington, Cedar Rapids & Minnesota Railway Company have each the right to use for a right of way that portion of the above granted and described premises now so used and occupied by them respectively."

Neither party traces its title back to the government, but appellant opens its argument by saying: "The facts in this case are that prior to 1872 one Bertram and others owned the land in controversy—a strip about twenty feet wide and about two hundred feet long. A sale of this property, together with land and lots east and west of it and north and south of it, also, was made by the owners about this date to O. N. Hull, now deceased; and Hull became the owner of the fee over which the railroad track referred to in the evidence as the original main line of the B. C. R. & N. ran; also of the land over which the C. & N. W. Ry. track was laid. Being the owner of all, negotiations were opened between Hull and the Star Wagon Company, then located further north, to sell a site south of what is now Twelfth avenue, formerly Shearer street, and east of the B., C. R. & N. tracks." From this admission it is to be inferred, in defendant's favor, that its road was laid across a body of land owned by Bertram and others, subsequently conveyed to Hull. The validity of its claim to a right of way is not put in issue. The only controversy is as to whether such way extends fifty feet east of the center of the main track, as originally located, or but thirty feet, to the fence.

The defendant insists that, from the laying of its track and operation of the road, the presumption arises that it acquired a right of way of the maximum statutory width, of one hundred feet. It cites *Drake v. Ry.*, 63 Iowa, 302, but, while the easement was there presumed, its width is not mentioned In *Campbell v. Ry.*, 110 Ind 490 (11 N. E. Rep. 482), the father of the plaintiff had permitted defendant to lay its track through his farm in 1868, and to occupy and improve the right of way until 1881, when the son brought action for possession; and it was held that as the company had entered the land with the license and consent of the father, under whom the plaintiff claimed, and expended its money on the faith of such license, a right of way was acquired, in the absence of any limitations thereon, to the full statutory width. But the right to any way, rather than that of a particular breadth, was in issue. In *Prather v. Western Union Tel. Co.*, 89 Ind. 501, the railroad was constructed across plaintiff's farm, and he neglected to claim damages within the statutory period. The telegraph company, by permission of the railroad company, and on condition that the latter might use one wire, placed its poles twenty-nine feet from the center of the track; and the court held, in an action against it for trespass, that, in the absence of any record evidence of the width of the right of way, it would be presumed to be sixty feet, as authorized by statute. In *Jones v. Ry.*, 144 Pa. 629 (23 Atl. Rep. 251), the track appears to have been constructed in the street within thirty feet of plaintiff's lot, and he asked damages. The court held that, in the absence of proof to the contrary, the company will be presumed to intend to appropriate all the statute will allow, saying: "The lines of a street on which a railroad company locates the center line of its road and lays its tracks are not necessarily, nor presumed to be, the boundaries of its right of way. These may be within, beyond, or upon the lines of the street, but in either case it

is the duty of the company to designate them by some appropriate and decisive act. A company which refuses, when requested by the lot owner, to define its right of way by marking the outside lines, may be expected, when its necessities or interests require it, to claim an appropriation of the full width of sixty feet, and to invoke the presumption already mentioned in support of the claim."

It is clear from these decisions that defendant's predecessor must be presumed to have acquired a right of way one hundred feet wide, in establishing the road. That was prior to the conveyance by Hull to the wagon company. The tract of land owned by him was servient to the easement of the railroad company, and, of course, he could not deprive it of any part of the right of way by sale to others. But a railroad company is not bound to acquire a right of way of any particular width, nor to lay its main track in the center of that which is acquired. While ordinarily it is to be presumed to have obtained a way of the maximum width, and to have intended to have its track in the center, this is merely a naked assumption, casting the burden of proof on any one asserting the contrary, and may be overcome by evidence rebutting the inference. As to width, this must necessarily be so, for ordinarily a small portion of the right of way is at first made use of, and the remainder only as necessity demands. Hence actual possession of the portion of the way farthest from the track is seldom taken prior to the construction of fences. But this very fact should make courts cautious in fixing such boundaries, and exact satisfactory proof in order to defeat the assumption. The right of way immediately north of this is but sixty feet wide. The precise width of that to the south is not disclosed, but seems to be somewhat less than one hundred feet. This fence was placed on what the wagon company supposed to be the boundary line in 1874, within three years of the laying of the track. It was a part of the inclosure of its entire

grounds. It was such a structure as usually marks a division line, and of its location and the occupancy of the disputed strip the defendant was charged with notice. The continuance of this fence and the occupancy of the land up to it for more than twenty-five years, without any objection on part of defendant, we think sufficient to overcome the presumption that the railroad had acquired an easement in a strip of land fifty feet wide east of the center of its main track, and leads to the conclusion that it had either obtained a right of way less than one hundred feet in width, or else that the greater part lies west of the center of the track. In *Barlow v. Ry.*, 29 Iowa, 276, and *Slocumb v. Ry.*, 57 Iowa, 675, the extent of the right of way was fixed. Here the disputed land had been conveyed by Hull to the wagon company, and the defendant necessarily relies solely on the presumption arising from the location of its tracks.—REVERSED.