ALEXANDER J. SHAMBERG, PLAINTIFF IN ERROR, v. NEW JERSEY SHORE LINE RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued December 5, 1905—Decided June 18, 1906.

The location by a railroad company of its right of way over lands of the state which from considerations of public policy it cannot acquire, either by consent or condemnation, does not invest such company with the right to condemn other lands covered by such location.

On error to the Supreme Court. For opinion of that court, see 43 *Vroom* 160.

For the plaintiff in error, *William H. Corbin.*

For the defendant in error, *Vredenburgh, Wall & Van Winkle.*

The opinion of the court was delivered by

GARRISON, J.   This writ of error brings up a judgment rendered in proceedings upon *certiorari* and affirming an order appointing commissioners to condemn lands of the plaintiff in error, who was the prosecutor in *certiorari*. The land of the prosecutor proposed to be taken for railroad purposes is a strip about one thousand feet in length, which constitutes the *ripa* of the Hudson river, whose high-water line is its easterly boundary. The strip varies in width from a few inches to a few feet and is the westerly part of the defendant's located route, all the rest of which lies below the high-water line of the Hudson river.

The title to these lands which thus constitute almost the whole of the located right of way of the defendant in error is in the State of New Jersey. This circumstance furnishes the ground upon which the plaintiff in error, by his second assignment, challenges the legality of such location, so far

at least as regards its validity to support the proceedings brought up by this writ. The contention of the plaintiff in error is that the railroad company is not invested with the power to condemn his lands unless its located route be susceptible of acquisition by it, and that the land of the state covered by the present location cannot be acquired by grant because of section 40 of the act concerning Riparian Rights (*Gen. Stat., p.* 2794), which confers a pre-emptive right upon the plaintiff in error as riparian owner, and that it cannot be acquired by condemnation because of section 13 of the act under which the defendant in error is incorporated, which provides that "no company shall be authorized to take by condemnation any land belonging to the State of New Jersey." *Pamph. L.* 1903, *p.* 653. The facts upon which this contention rests are not controverted by the defendant in error, who concedes that as long as existing conditions last the lands of the state upon which it has located its route cannot be acquired by it, but contends that if the plaintiff in error, or some subsequent owner of the *ripa,* should at some future period take a grant from the state for such lands they would thereby become subject to condemnation by the defendant in error under its present location, or that if the six months' notice required by the Riparian act should be given to such riparian owner he would either have to take a grant of said lands himself, in which case they would become subject to condemnation, or in default thereof the person giving such notice could obtain such grant from the state, and thereby subject the title so taken to condemnation if the defendant in error did not by giving such notice itself obtain such grant to be made to it directly. This argument, however, is obviously no answer to the attack made by the plaintiff in error upon the validity of the located right of way of the defendant in error to sustain the present proceedings. Indeed, such argument throughout assumes the validity of such location, not only for all present purposes, but also for future conditions, that are admittedly either speculative or contingent. Such argument also loses sight of the fact that the located route of a railroad company is not only a limitation

upon the extent of its right to condemn lands, but that it is, if not the source, at least the channel, through which such right must flow to it. Through no other channel, under our general legislation, does the sovereign power of eminent domain become vested in a railroad company as a public agent. It is by the location of its route, and not by the institution of proceedings to condemn, that a railroad company constitutes itself the accredited agent of the state in this behalf. The former is in effect the criterion of the right to employ the latter. Indeed, the last-mentioned proceeding is merely the prescribed mode of ascertaining the sum of money such public agent must pay as the equivalent of the private rights that will be taken or destroyed by the construction of its road upon its located route. The extinguishment of these private rights is, however, upon constitutional grounds, so annexed to the grant of the sovereign power that such payment, and consequently such ascertainment, constitute an imperative condition of such grant. If in any case this condition is not performed the right of condemnation has not been exercised; but if the condition cannot be performed, the right of condemnation has not been acquired. So that there is much force in the contention that a route that is so located by a railroad company that neither by consent nor by condemnation can it acquire the private rights of the owners of the land, does not invest such company with the right of eminent domain. In this connection it is to be noted that, under our General Railroad law, to the agent itself is committed, not only the right to locate its road, but also the duty of qualifying itself by such location to perform the condition upon which the grant of eminent domain depends, namely, the ascertainment of the money equivalent of the private rights involved in such location, by the payment of which such rights may be extinguished or acquired. Unless this can be done the condition of the grant cannot be performed, and if the condition of the grant cannot be performed the grant itself has not been acquired. The application of these considerations to the location filed by the defendant in error is not met, as has already been said, by mere forecasts as to the

future susceptibility of the lands now of the state to become at some future time subject to acquisition, however plausible such conjectures may be. Neither does such application fail because the rights of the plaintiff in error are not in themselves inherently insusceptible of condemnation, for the question is one of power, or rather of the transmission of power from the state to the condemning agent through a well-defined channel, hence if such channel be impervious to. such power other considerations are devoid of significance.

That the property rights of the state in the located road are private rights is established law. That they cannot be granted or condemned has already been pointed out. That the state, through its riparian commission, cannot give efficient consent to the occupation by this defendant in error of this located route has been recently decided. *Shamberg v. Riparian Commissioners, 43 Vroom* 132. The standing of this plaintiff in error to litigate this question is clear, not only because he has a direct legal interest in such controversy, but also because of the substantial embarrassments that must attend the valuation of his inchoate rights while subject to the various contingencies pointed out by the defendant in error.

The conclusion to which the foregoing considerations tend has already been indicated, viz., that the route of a railroad company located upon lands that it cannot acquire does not clothe such company with powers of condemnation. The facts before us, however, do not call for the announcement of so broad a doctrine, for it will be noted that in the present case the incapacity of the defendant in error to acquire the lands of the state upon which its route is located arises solely from reasons that rest in public policy, namely, the pre-emptive rights of riparian owners and the immunity from condemnation of the state's title to its riparian lands. To the narrower state of facts presented by the case before us our judgment should therefore be limited. Thus limited, our decision is that the location by the defendant in error of its right of way upon lands of the state which from considerations of public policy it cannot acquire, either by consent

or condemnation, does not invest it with the right to condemn the lands of the plaintiff in error covered by such location.

In accordance with these views, the judgment of the Supreme Court affirming the order appointing commissioners to condemn the lands of the plaintiff in error must be reversed, and the order appointing such commissioners be set aside.

*For affirmance*—GARRETSON, HENDRICKSON, PITNEY, VROOM. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, REED, BOGERT, VREDENBURGH, GRAY, DILL. 8.