[No. 7773. *En Banc*. August 26, 1909.]

THE STATE OF WASHINGTON, *on the Relation of I. Hulme et al., Relators*, v. GRAYS HARBOR AND PUGET SOUND RAILWAY COMPANY, *Respondent*.[1]

NAVIGABLE WATERS—COMMERCE—LANDS UNDER WATERS—HARBOR AREAS—LEASES—RAILROAD PURPOSES. The provision in Const., art. 15, § 1, that the harbor area shall never be sold or granted but shall be reserved for "landings, wharves, streets and other conveniences of navigation and commerce," has reference to commerce both by land and water, as "navigation" is not used in a restrictive sense; hence, under art. 15, § 2, authorizing the leasing for terms not exceeding thirty years, of the right to build on the harbor area "wharves, docks, and other structures," the state may lease the right to build a railroad on the harbor area; "other structures" in section 2 being equivalent to "other conveniences" of commerce in section 1 (RUDKIN, C. J., MOUNT, DUNBAR, and CROW, JJ., dissenting).

EMINENT DOMAIN—NECESSITY—OBJECTIONS—CROSSING ABUTTING HARBOR AREA. It is not a valid objection to the necessity of a railroad company's condemnation of tide lands, that it must first cross the abutting harbor area and that the constitution and laws prohibit the acquisition of harbor area by condemnation, since the state may lease for thirty years the right to construct a railroad on the harbor area (RUDKIN, C. J., MOUNT, DUNBAR, and CROW, JJ., dissenting).

EMINENT DOMAIN—DAMAGES—TIDE LANDS—TITLE—RIGHT TO LEASE HARBOR AREA. The owner of tide lands, appropriated by a railroad company, having the preference right to lease the abutting harbor area, is entitled to recover as damages the value of the land taken at the time of the trial and damages to the part not taken, plus the value of the statutory right to lease abutting harbor area; and it is immaterial that the title to the tide land was not acquired from the state until after the condemnation suit was commenced, it having been previously applied for.

[1]Reported in 103 Pac. 809.

EMINENT DOMAIN — CONDITIONS PRECEDENT — RIGHT TO BRIDGE STREAM—NAVIGATION. The consent of the secretary of war to construct a bridge over a navigable stream is not a condition precedent to condemnation of tide lands to be reached by way of the bridge, inasmuch as the state has given its consent by Bal. Code, §§ 4336, 4307, providing that bridges across navigable streams shall be so constructed as not to interfere with or obstruct navigation.

EMINENT DOMAIN—CONDITION PRECEDENT—SUBSCRIPTION OF CAPITAL STOCK—PLEADING. An allegation of the incorporation of a railroad company seeking to condemn land is not a compliance with Bal. Code, § 4250, providing that no railroad company shall institute such proceedings until the whole amount of the capital stock is subscribed, as that condition is not essential to incorporation.

SAME—WAIVER OF CONDITION—PLEA IN ABATEMENT. The provision of Bal. Code, § 4250, that no railroad company shall institute proceedings to condemn land until the who'e of its capital stock is subscribed, is a rule of public policy, anf is not waived by the landowner's failure to raise it by plea in aoatement.

SAME—WAIVER OF PROOF. Waiver of proof of incorporation and payment of a corporate license fee does not waive proof of the subscription to the capital stock of the petitioner.

Certiorari to review a judgment of the superior court for Chehalis county, Irwin, J., entered November 2, 1908, adjudging a public use in condemnation proceedings for a railroad right of way, after a hearing on the merits before the court. Reversed.

*W. H. Abel* and *Hughes, McMicken, Dovell & Ramsey,* for relators.

*Bogle & Spooner* and *J. B. Bridges,* for respondent.

GOSE, J.—This is a proceeding by certiorari to review a decree of condemnation, entered in the superior court of Chehalis county. The respondent, a railroad corporation, on June 15, 1907, filed a petition in the lower court alleging the essential facts showing its right to condemn for a public use a strip of land fifty feet in width across tide land lot No. 6, tract No. 17, of the Aberdeen tide lands, belonging to the relators, except it did not allege that the whole amount

of its capital stock had been subscribed. The relators answered and joined issue on all the material allegations of the petition, and affirmatively averred, that on February 16, 1907, they filed their application to purchase the lot above described in the office of the commissioner of public lands of this state, that they purchased it from the state on October 8, 1908, and that they have since owned the same; that on September 16, 1907, they filed in the office of the commissioner an application to lease the harbor area in front of, and abutting upon, such lot, which application is still pending; that in virtue of the ownership of such lot, they had the preference right to lease the harbor area; that the lot and the harbor area constitute one property, and that the taking of one will materially damage the other. Upon the hearing the court entered a decree adjudging that the respondent is a public service corporation, duly organized and existing under the laws of this state; that its entire capital stock had been subscribed; that it has power, under its articles of incorporation, to acquire, construct, and operate a line of railroad on such route as its chief engineer and board of directors may select; that it is authorized by law to appropriate lands and other property for a right of way; that the relators are interested in tide land lot 6, in tract 17, of the Aberdeen tide lands, over which the respondent's proposed railway would pass, which route and the right of way sought were specifically described, and that such strip of land was necessary for the uses and purposes of respondent; that the contemplated use thereof was a public one, and that the public interest required the prosecution of the enterprise.

The record discloses that the respondent had surveyed and located a line of railroad from a point near Centralia to a point at Hoquiam, in this state; that such located line had been approved by its chief engineer and adopted by its board of directors; that the line of railway extends from the eastern side of Cosmopolis, westerly through that city, on through South Aberdeen to the southerly bank of the Chehalis river,

to and across the land of the relators; that the Chehalis river at this point is a navigable river, in which the tide ebbs and flows; that the harbor area in front of relators' land has been surveyed and established by the state; that the relators' premises extend from the inner line of the harbor area to and including the upland on the bank of the river; that the relators filed their application to lease the harbor area in front of such lot in the office of the state land commissioner, on February 16, 1907, and that the located line of respondent's road crosses the Chehalis river, the harbor area, and relators' tide land lot fronting and abutting on the harbor area.

The relators urge three grounds for a reversal of the decree: (1) That the respondent cannot acquire the right to cross the harbor area in front of their lot, and that for this reason there is no necessity for the appropriation of a right of way over this lot; (2) that the respondent has not secured the approval of a plan to bridge the Chehalis river from the proper officers of the Federal government, and that such approval is a condition precedent to its right to condemn property for a right of way; (3) that the respondent neither pleaded nor proved that the whole amount of its capital stock had been subscribed. These propositions will receive attention in the order stated.

In support of the first proposition, the relators cite and rely upon the constitution, art 15, §§ 1 and 2; *State ex rel. Denny v. Bridges*, 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593; Bal. Code, § 4334; Laws 1907, p. 674; *Shamberg v. New Jersey Shore Line R. Co.*, 73 N. J. L. 572, 64 Atl. 114, and *In re Milwaukee Southern R. Co.*, 124 Wis. 490, 102 N. W. 402. In the *Shamberg* case the railway company sought to condemn against a private owner a strip of land one thousand feet in length and varying in width from a few inches to a few feet, and which formed the westerly part of a located route, the remainder of which lay below the high water line of the Hudson river and belonged to the state. The

court held that the narrow strip of land could not be condemned, and at page 116 stated its reasons as follows:

"Thus limited, our decision is that the location by the defendant in error of its right of way upon lands of the state which from considerations of public policy it cannot acquire, either by consent or condemnation, does not invest it with the right to condemn the lands of the plaintiff in error covered by such location."

In the *Milwaukee* case the railway company sought to condemn a right of way through a public park in the city of Milwaukee as a part of a continuous line. The court held that it could "efficiently and beneficially exercise the power of locating and building its road between the termini without invading" the park, and that there was therefore no necessity for taking any part of the park, and that it was already devoted to a public use.

Section 1, art. 15, of the constitution, after authorizing the legislature to provide for a commission whose duty it should be to locate and establish harbor lines in the navigable waters in front of the corporate limits of any city, provided that:

"The state shall never give, sell, or lease to any private person, corporation or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets and other conveniences of navigation and commerce."

Section 2 of the same article directs that the legislature shall provide for leasing the right to build "wharves, docks, and other structures" upon the harbor areas mentioned in § 1, but that no lease shall be made for any term longer than thirty years. Laws 1907, p. 674, empowers every railway

corporation to appropriate land by condemnation, but exempts harbor areas therefrom.

The respondent concedes that a railway company cannot acquire the harbor area by condemnation, and it also admits that the necessity for the use of relators' property depends upon the right of the respondent to cross the harbor area in front of it, and contends that this right can be acquired from the state by means of a lease. It therefore becomes important to ascertain the true meaning of the constitutional provisions which we have quoted, and the legislation enacted in recognition of the limitations which they impose. The relators urge in their brief, and it was pressed with great zeal and ability by their counsel in the oral argument, that the words in the first section "and other conveniences of navigation and commerce" mean commerce by sea, and that the words "wharves, docks, and other structures" in the second section have reference to other structures such as wharves and docks.

In *Chicago & N. W. R. Co. v. Fuller*, 84 U. S. 560, 21 L. Ed. 710, the court, in defining the word "commerce," said: "Commerce is traffic, but it is much more. It includes also transportation by land and water and all the means and appliances necessarily employed in carrying it on." Our attention has been directed to the statement of this court in *State ex rel. Denny v. Bridges*, where we said: "The word 'navigation,' as used in the first section of the article of the constitution quoted [art. 15, § 1], is clearly used as a qualification of the word 'commerce.'" This statement, however, was not necessary for the determination of the case. The real point at issue in that case was whether the state had power to lease the harbor area to accommodate a private interest only remotely connected with commerce. The statement was, therefore, dictum, and we do not regard it as a sound interpretation of that clause of the constitution.

Commerce by land and commerce by water are so intimately correlated that it was evidently not the intention of

the framers of the constitution to use the words "navigation and commerce" in a restrictive sense. We should rather impute to them the intention to use the words in that broader sense which includes commerce in all its ramifications, to the end that the development of the state's resources should not be hampered. The sparsely settled and undeveloped condition of the state when these words were penned would seem to emphasize the view that the state did not intend to impose a limitation upon itself which would embarrass its progress and development. Rather should we assume that the words were used in recognition of the pressing need at that time for larger transportation facilities, both by land and water. Much of the maritime commerce has neither its beginning nor ending at the sea.

Nor can this view result in a disadvantage to water commerce. The legislature has provided that bridges across navigable streams shall be so constructed as not to "interfere with, impede, or obstruct the navigation of such streams." Pierce's Code, §§ 7091 and 7814 (Bal. Code, §§ 4336, 4307). The law of 1907, page 674, exempting harbor areas from condemnation, is but a recognition of the limitation, imposed upon the state by the article under consideration, to leasing it for a period not exceeding thirty years. It would seem that, with the many distinguished lawyers in our constitutional convention, if it had been the intention to reserve the harbor area for the building of wharves, docks, and other structures in aid of commerce by water only, the intention to do so would have been expressed in unequivocal words.

The construction contended for might result in much mischief. It may well be that the denial of the right to railroad companies to cross the harbor areas of navigable streams would forbid the building of lateral lines, without which the resources of a considerable portion of our state would remain undeveloped. Without such a construction, the interests of the state are abundantly protected by the words of limita-

tion, "and other conveniences of navigation and commerce."
We regard the words "other structures" in the second sec-
tion, as equivalent in meaning to the words "other conven-
iences" in the first section.  They have reference to the same
subject-matter, viz., that the area shall be reserved to the
state to be used by it or its creatures in aid of navigation
and commerce.  Pierce's Code, § 8224 (Laws 1899, p. 235),
provides, "that the board of state land commissioners shall
have the power to lease the right to build and maintain
wharves, docks, and other structures upon the harbor areas,"
laid out in pursuance of the provisions of the constitution.
There is no exception made in this section against leasing
to railroad companies.  Section 8224a (Bal. Code, § 2184),
gives the upland owner a preference right to lease the har-
bor area upon which his upland abuts.

We conclude, therefore, that neither the constitution nor
the statute precludes the respondent from acquiring the right
to cross the harbor area, provided that in doing so it does
not interfere with, impede, or obstruct the navigation of such
stream.  This right must be acquired from the state.  The
view we have expressed differentiates the case from the *Sham-
berg* and *Milwaukee* cases.

The relators are entitled to recover the value of their prop-
erty at the time of trial for the assessment of their damages.
The fact that the lot was acquired, and that the application
to lease the harbor area was made, after the commencement
of the condemnation suit does not militate against this right.
Their recovery will be the value of the part of the tide lot
taken and damages to the portions not taken, to which will
be added the value of their statutory right to lease the harbor
area upon which it abuts.  *Grays Harbor and Puget Sound
R. Co. v. Kauppinen*, 53 Wash. 238, 101 Pac. 835.

(2)  Is the procuring of the consent of the secretary
of war to construct a bridge over the Chehalis river a con-
dition precedent to the right of the respondent to condemn
property for its right of way?  We think not.  The state

has given its consent. Pierce's Code, §§ 7091 and 7814. In *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.* 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198, at page 638, we said:

"We think that, when it is made to appear that a promoter of an enterprise of this kind is proceeding diligently with it, and nothing is shown to have occurred that will prevent its ultimate accomplishment, that the court ought not to deny the right to acquire by condemnation an essential part merely because there is a possibility that the enterprise cannot be carried to completion. There is no danger that the property condemned will be applied to uses foreign to the purposes for which it is condemned. The property does not become the private property of the condemning corporation in the sense that it can appropriate it to uses of a private nature. It must use it for the purposes for which it condemns it, or else submit to its reversion at the suit of the state."

This has become the settled rule in this state, and forecloses the relators' contention.

(3) The respondent neither pleaded nor proved that the whole or any of its capital stock had been subscribed. Pierce's Code, § 7053 (Bal. Code, § 4250), provides that no railroad corporation "shall . . . institute proceedings to condemn land for corporate purposes until the whole amount of its capital stock has been subscribed." The respondent first contends that this is included in the general allegation of incorporation. The subscription of the whole of the capital stock is not made one of the elements of incorporation, but a prerequisite to the right to condemn. Secondly, it contends that it is only matter in abatement of the action, and is waived if not specially pleaded; citing *South Yuba Water & Min. Co. v. Rosa*, 80 Cal. 333, 22 Pac. 222, and *Ward v. Minnesota & N. W. R. Co.*, 119 Ill. 289, 10 N. E. 365. In the former case, the party seeking to condemn had failed to comply with the provisions of the code pertaining to the filing of its articles of incorporation in the office of the county clerk. The court held that it was waived unless raised by a plea in

abatement. In the latter case, it is held that the fact of corporate existence was waived if the landowner went to trial on the merits without requiring the proof to be made. The power of eminent domain is an attribute of sovereignty, and can only be exercised under the conditions fixed by the sovereign power, and in this state the subscription of the whole of the capital stock has been made a condition precedent' to the exercise of the power. The statute announces a rule of public policy, not so much for the benefit of the landowner, but as a safeguard against the improvident exercise of the power. The cases cited are therefore not in point. It is urged further that proof of compliance with the statute was waived at the trial by the following agreement between counsel:

"Mr. Bridges: Do you insist on proof of incorporation, etc? Mr. Abel: No, we do not insist on that. Mr. Bridges: Or the payment of the license fee? Mr. Abel: No, I won't raise any point on that."

It is clear that the matter of subscription of the capital stock is not included within the waiver.

The judgment will be reversed, and the cause remanded with directions to permit an amendment of the petition and submission of the evidence in conformity with this opinion. The relators will recover their costs.

CHADWICK, FULLERTON, PARKER, and MORRIS, JJ., concur.

MOUNT, J. (dissenting)—I cannot agree that respondent may acquire, by lease or otherwise, the right to bridge or cross the harbor area in question. The constitutional provision is so plain to my mind that it requires no argument to show that the navigable waters of harbors within the corporate limits of any city shall never be obstructed in any way. Section 1 of art. 15 of the constitution provides:

"The legislature shall provide for . . . a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors . . . wherever such

navigable waters lie within or in front of the corporate limits of any city . . . The state shall never give, sell, or lease to any private person, corporation, or association any rights whatever in the waters beyond such harbor lines."

This last clause absolutely prohibits the acquisition of any rights in such navigable waters by private persons or corporations. The section then continues:

"Nor shall any of the area lying between any harbor line and the line of ordinary high tide and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the state, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets and other conveniences of navigation and commerce."

When it is understood that the harbor area is a strip of water lying between ordinary high tide and the harbor line, which is located in deep or navigable water, and when it is also understood that the state shall never give, sell, or lease any rights in such navigable water to private interests, it seems clear that the reservation of the "landings, wharves, streets, and other conveniences of navigation and commerce" refers to conveniences of navigation and commerce carried on by water, and not to commerce in its broad and general sense. The navigable waters in these harbors were intended to be kept free and open and unobstructed for navigation. The harbor area adjoining the navigable waters was intended to be reserved and controlled by the state for the convenient use of these waters, and is not subject to sale or grant, but the right may be leased for limited times, for the purpose of building and maintaining wharves, docks, and other structures thereon, and for such purposes only. Section 2 of art. 15, Constitution; *State ex rel. Trimble v. Bridges*, 22 Wash. 98, 60 Pac. 66. Obviously the state could not lease this harbor area for manufacturing purposes or for markets, or canning fish, nor for storing ice, for handling fish, or other like purposes; because such purposes are not

conveniences of navigation or commerce.  *State ex rel. Denny v. Bridges*, 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593.
In this last case cited this court construed these provisions of the constitution and said, at page 47:

"The word 'navigation,' as used in the first section of the article of the constitution quoted, is clearly used as a qualification of the word 'commerce,' and the provisions for maintaining upon the harbor area wharves, docks and other structures, by or through the state, refers to structures which are conveniences of navigation and commerce. We think the language as well as the sense of these two sections of the constitution is plain, and the ordinary rules of statutory and constitutional construction fit this sense. It is plainly said in § 2 that the wharves, docks and other structures are those mentioned in § 1. Then the rule of *ejusdem generis* is plainly applicable here, and 'other structures' must fall within the genus 'conveniences of navigation and commerce.' "

This is conclusive of the question presented in this case. It is said, however, in the majority opinion that this is mere dictum. It may not have been necessary to the decision in that case, but the question was presented, considered, and decided, and, in my opinion, correctly decided, and should therefore now control this case. If no private rights may be granted by the state in the navigable waters of harbors within the limits of a city, then certainly the respondent may not acquire a right to build a bridge across such waters or the harbor area in front thereof. It is sought in this case to cross both the harbor area and the navigable water in front thereof. It is conceded that the respondent has no right to condemn a right of way across this harbor area. Such right is expressly negatived by statute. Laws of 1897, page 674. But it is claimed that a railway bridge is a convenience of commerce. A comprehensive meaning of the word "commerce" may include such structures as railroad bridges, but such structure as is proposed in this case is not a convenience of navigation, or of commerce by navigation, at the place where it is proposed to construct the bridge. It would

·clearly be an obstruction thereto and not a convenience. The action should therefore be dismissed. ·

· RUDKIN, C. J., DUNBAR, and CROW, JJ., concur with MOUNT, J.