[No. 8845. *En Banc.* September 14, 1911.]

## A. NEITZEL et al., *Appellants*, v. SPOKANE INTERNATIONAL RAILWAY COMPANY et al., *Respondents*.[1]

EMINENT DOMAIN — PROCEEDINGS — JUDGMENT — RES ˙ JUDICATA— MATTERS CONCLUDED — REVERSION — ABANDONMENT OF PUBLIC USE. Where a railroad company appropriated land for right of way and terminal purposes, but devoted the same to other purposes, the final judgment in the condemnation proceedings is not *res judicata* nor a bar to an action by the·former owner to recover the lands,. where his complaint alleges that the lands were being devoted by the railroad company to a private use not alleged or adjudged to be public in the condemnation proceedings; since the cause of action is consistent with the judgment.

EMINENT DOMAIN—STATUTES—CONSTRUCTION. Statutes conferring the right of eminent domain are to be strictly construed as to the extent of the interest or title that may be acquired by appropriation.

EMINENT DOMAIN—TITLE ACQUIRED—REVERSION—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 8740, authorizing a railway company to condemn land for its right of way and for yards, grounds, docks, and warehouses required for receiving, delivery, storage and handling of freight, and § 927 providing that the decree shall vest the legal title in the corporation for corporate purposes, the fee simple title does not vest in the corporation, but it acquires only such qualified title or interest as it needed for its corporate purposes constituting a public use; and devotion of the same to a private purpose is an abandonment which calls for an explanation to avoid a reversion.

EMINENT DOMAIN—PUBLIC USE—PRIVATE PURPOSES. A wholesale grocery business conducted by a private corporation on lands leased from a railroad company is not a public use, under our eminent domain statutes making the question of public use a judicial question.

EMINENT DOMAIN—ABANDONMENT OF PUBLIC USE — REVERSION— ACTIONS—PLEADING—SUFFICIENCY OF COMPLAINT. Where land had been appropriated by a railway company for right of way, side tracks, depot grounds, and terminal yards, a complaint by the former owner, seeking to recover the lands on the ground of abandonment and reversion; states ·a cause· of action, where it alleges that the railroad company had never used the lands for railroad purposes but had leased the same for a term of twenty-five years to

[1]Reported in 117 Pac. 864.

a private corporation, which had constructed a private warehouse thereon and exclusively occupied the lots in conducting its private business as a wholesale grocer.

SAME—REVERSION—ACTION—PARTIES PLAINTIFF. The owner of lands that have been appropriated by a railroad company for public purposes may maintain an action to recover possession thereof when the railroad company has permanently abandoned the same to uses of a private nature.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 17, 1910, upon sustaining a demurrer to the complaint, in an action to recover real property, and for damages. Reversed.

*Hoffman & Bailey* and *Joseph Rosslow*, for appellants.

*Allen & Allen* and *Cannon, Ferris, Swan & Lally*, for respondents.

CROW, J.—This action was commenced by A. Neitzel, Joe Neitzel, J. F. Thielmann and Hannah Thielmann, his wife, against Spokane International Railway Company, a corporation, and Benham & Griffith Company, a corporation, to recover lots 12 and 13, in block 4, of Riverfront addition to Spokane, and for damages. Plaintiffs elected to stand upon their complaint, to which a demurrer was interposed and sustained, and have appealed from a judgment of dismissal.

The complaint in substance alleges, that respondent Spokane International Railway Company, hereinafter mentioned as railway company, is a public service corporation, existing under the laws of Washington, and organized for the purpose of constructing, maintaining, and operating a railroad from the city of Spokane, one of its termini; that appellants at all times since June 29, 1903, have owned the lots, and have been and are now entitled to their possession; that on June 5, 1905, the railway company commenced an action in the superior court of Spokane county to condemn the lots, and in its petition alleged:

"That it is essential for the operation of its lines of railway and the accommodation of the public using the same that

it acquire these lands (description) for use of its right of way for the lines of its said railway and for necessary side tracks, depot grounds, and terminal yards . . . that in the construction and operation of said line of railway, it is requisite and necessary for your petitioner to take and use as a part of its right of way, for the line of its railway, and for necessary side tracks, depots, and other appurtenances to said railroad, the whole of said lands belonging to the defendants;"

that thereafter and in due course of procedure, an order was entered, which, in part, reads as follows:

"It is considered, ordered and adjudged that those certain premises described in the petition herein (description) are required by the petitioner for the construction of its railway line, and that the use for which said premises are sought to be taken is a public use, and that the public interest requires the prosecution of the enterprise projected by the plaintiff, and that the premises hereinbefore described are necessary for the purposes of such enterprises;"

that later a jury was empaneled to assess damages, and a judgment of appropriation was entered describing the lots taken, which judgment, in part, reads as follows:

"It is considered, ordered and adjudged that the above described real estate shall be and the same hereby is appropriated *to the corporate purposes* of the petitioner, the Spokane International Railway Company, and that the legal title thereto shall be and the same hereby is vested in the said Spokane International Railway Company;"

that the railway company acquired various other lots in the same locality, for the development of its plans for depot grounds, station grounds, terminals, private warehouse grounds and side tracks, according to a general purpose which, at the time of condemnation, was not known to appellants; that it intended to use appellants' lots for a private warehouse site and not for a public use; that it has built a freight depot, constructed side tracks, and commenced preparations for its passenger depot, but has set aside a large portion of the lands obtained by it for private warehouse sites; that after acquiring lands for terminal grounds, the railway

company leased portions thereof to wholesale dealers who, with one exception, have constructed private warehouses thereon; that it leased to Benham & Griffith Company, for the term of twenty-five years, a portion of said lands, including all of lots 12 and 13; that Benham & Griffith Company has erected a warehouse thereon, and since October 1, 1906, has exclusively occupied the lots in conducting its private business as a wholesale grocer; that lots 12 and 13 are reasonably worth $30,000; that since 1906 their rental value has been $1,800 per annum; that at the time of the condemnation, appellants maintained a building on the lots, in which they operated a broom factory; that the condemnation took the building as well as the lots; that the railway company has removed the building; that appellants are unable to determine that portion of the damages awarded by the jury for the building separate and apart from that awarded for the lots; that they are ready, willing, and able to refund to the railway company such proportion of the damages awarded them as the court may determine to be just, equitable, and proper; that the railway company has never devoted the lots to any public use; nor does it intend to do so, but that it intends to continue the private use to which they are now put; that in the condemnation proceedings the railway company did not disclose its true plans, intentions, and purposes, but kept them secret; thereby deceiving appellants and the court; that appellants did not learn of the fraud thus practiced until some time in June, 1907; and that the railway company and Benham & Griffith Company, its lessee, now hold the lots, depriving appellants of the same, in violation of art. 1, § 16, of the state constitution. The prayer of the complaint is, (1) for possession; (2) for damages for withholding possession; and (3) that the condemnation proceedings be declared null and void.

Calling attention to the third subdivision of the prayer, respondents insist this action is an attack on the condemnation judgment, necessarily collateral, as the allegations of the

complaint are not sufficient to show a direct attack; that other relief which appellants demand cannot be awarded without a vacation of the judgment, which could be obtained by direct attack only; that the judgment is valid, subsisting, of full force and effect, and that it has adjudged and decreed the property was taken for a public use to which it is now devoted.

Assuming, without deciding, that a collateral and not a direct attack is made upon the judgment, the complaint, nevertheless, must be sustained as against the demurrer if it contains allegations sufficient to state a cause of action consistent with the judgment which will entitle the appellants to other relief. In other words, accepting the judgment as valid and of full force and effect, if a cause of action has accrued to appellants since its entry, which will entitle them to regain possession and recover damages, and such cause of action is stated in the complaint, the demurrer could not be sustained. For reasons hereinafter stated, we conclude the complaint is good as against the demurrer, and will therefore refrain from any discussion of the issue of direct or collateral attack. Nor do we think the complaint shows the condemnation judgment to be a former adjudication of all causes of action pleaded by appellants. It unquestionably appears from the complaint that the lots were condemned and taken for an adjudged public use, but it does not appear that the particular use to which they are now devoted was, in the condemnation petition or proceeding, alleged or adjudged to be public. If, therefore, the use to which they are now devoted be not public, the question arises whether respondents may continue holding them for a private use or whether appellants may recover possession.

The vital questions on this appeal are, (1) What title or interest vested in the railway company; (2) Having condemned for a public use, has the railway company abandoned such use; and (3) If it has and intends to continue such

abandonment by devoting the lots to a private use only, are appellants entitled to maintain this action?

The power of eminent domain, which is necessarily inherent in the Federal and state governments as an incident of sovereignty, can only be exercised by subordinate agencies when expressly granted within constitutional limitations through the medium of legislative enactment. · When a legislature delegates to any subordinate agency, such as a municipality or a public service corporation, the right and authority to exercise the power of eminent domain, it ordinarily defines the estate or interest to be appropriated, having power to authorize the taking of a complete fee simple title, a qualified fee, or an easement only. When it has prescribed by statute the extent of interest to be vested, none further can be taken. Courts in construing statutes which grant the power, and authorize the taking of a certain estate or interest, enforce the rule of strict construction, permitting no greater title or interest to vest than has been expressly authorized or may be necessary to the contemplated public use. When an easement will be sufficient, no intendment or rule of liberal construction will be indulged to support an attempt to obtain any greater interest or estate. Rem. & Bal. Code, § 8740, authorizes and empowers a railway company to appropriate by condemnation land or any interest therein which may be necessary for the line of its railroad, not exceeding two hundred feet in width, and to appropriate sufficient additional land for necessary side tracks, depots, and water stations, and the right to conduct water thereto by aqueduct, and for yards, terminal, transfer, and switching grounds, docks and warehouses, *required for receiving, delivering, storage, and handling of freight.* · Rem. & Bal. Code, § 927, relating to the judgment of appropriation, provides that:

"At the time of rendering judgment for damages . . . . the court, or judge thereof, shall also enter a judgment or decree of appropriation of the land, real estate, premises, right of way, or other property sought to be appropriated,

thereby vesting the legal title to the same in the corporation seeking to appropriate such land, real estate; premises, right of way, or other property for corporate purposes."

In *Reichling v. Covington Lumber Co.*, 57 Wash. 225, 106 Pac. 777, 135 Am. St. 976, cited by respondents on the question of title, it appeared the city of Seattle had instituted proceedings in eminent domain to acquire the title to certain land for its Cedar River Water system; that the owner appeared and defended; that an award of damages was made for the taking of the land; that a decree was entered awarding "the fee simple title" to the city; that later the city granted a license to the Covington Lumber Company to construct a logging railroad over the land; and that the former owner, the defendant in the condemnation proceedings, claiming to hold the fee simple title subject only to an easement held by the city, sought to enjoin the lumber company from trespassing on the land, under the city license. Passing upon the title vested in the city by condemnation, this court, after commenting upon *Seattle Land & Imp. Co. v. Seattle*, 37 Wash. 274, 79 Pac. 780; Rem. & Bal. Code, § 7507, subd. 3; Bal. Code, §§ 781 and 787; *Gasaway v. Seattle*, 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68, and distinguishing *Spokane v. Colby*, 16 Wash. 610, 48 Pac. 248, held the city had acquired the fee simple title. It will be noted, however, that the judgment in the condemnation suit, in which the owner had appeared and defended, awarded the fee simple title to the city upon payment of damages, found by the jury. Such judgment was *res adjudicata* on that issue. No such order appears in the condemnation judgment now before us as the same is pleaded, although the words "legal title" are used in connection with the words "to the corporate purposes of the petitioner." Moreover, as suggested in the *Reichling* case, in a discussion of statutes cited, it was the view of this court that the vesting of the fee simple title was contemplated and necessary for the proposed public use of the municipality. The legislature by statute, Rem. & Bal.

Code, § 7784, has since provided that, in condemnation by a city or town, "the title to any property so taken shall be vested in fee simple in such city or town." This language is explicit. But the statute defining the title acquired by the respondent railway company, Rem. & Bal. Code, § 927, *supra*, provides that the decree shall vest "the legal title . . . in the corporation . . . for corporate purposes." This language clearly indicates that such a title only, not a fee simple, but a qualified fee or an easement, shall be vested as may be necessary for the contemplated corporate purpose; and such corporate purpose, under art. 1, § 16, of the constitution, must necessarily be a public use. Under the prevailing strict rules of construction which the courts enforce when considering eminent domain statutes, we conclude the legislature, by the enactment of this section, did not intend an unqualified fee simple title should vest in the respondent railway company. It therefore took such qualified title or interest only as it needed for its corporate purposes constituting a public use.

When a public service corporation acquires property by the right of eminent domain, the permanency of the right, title, or easement which it obtains will, in the absence of a statute vesting an absolute fee, be dependent upon continued application to the public use, and should such public use become impossible or be abandoned, the rights of the condemning corporation may be terminated, and the property may be reclaimed by the owner of the fee. It may be remarked, however, that before a reversion will be awarded, it must be made to appear that the condemning corporation has finally and positively abandoned the application of the property to the public use, and does not intend to restore it. Property acquired by the right of eminent domain cannot, unless the absolute fee has passed, be devoted to any purpose other than that for which it was taken, and a disclosure of the fact that it has been devoted to a private use will constitute such a showing of abandonment as will call for explanation from the

condemning corporation in order that a reversion may be avoided.

Respondents contend the railway company has acquired an unqualified fee in pursuance of Rem. & Bal. Code, § 927, *supra*, and cite: *Malone v. Toledo*, 34 Ohio St. 541; *Rexford v. Knight*, 15 Barb. 627; *Birdsall v. Cary*, 66 How. Pr. 358; *Water Works Co. v. Burkhart*, 41 Ind. 364; *Nelson v. Fleming*, 56 Ind. 310; *Cromie v. Board of Trustees*, 71 Ind. 208; *Logansport v. Shirk*, 88 Ind. 563; *Mason v. Lake Erie etc. R. Co.*, 9 Biss. (U. S.) 239. In a number of these cases the question involved was, what title the sovereignty acquired when lands were taken for public canals to be owned and operated by the state, no rights of any private corporation under an exercise of the power of eminent domain being involved. In others, statutes vesting a fee simple title were under consideration. In the state of Indiana, from which *Water Works Co. v. Burkhart*, *supra*, and other cases upon which respondents particularly rely are cited, the supreme court, in *Quick v. Taylor*, 113 Ind. 540, 16 N. E. 588, later said:

"While it is true, that, under the act authorizing the state to appropriate lands for the construction of the Wabash and Erie Canal, it has been held that the state and its grantees, successively, acquired the fee simple in lands thus appropriated, this ruling has been followed reluctantly, and has not been applied except to lands acquired under the internal improvement act of 1836 [cases cited]. So far we are advised, the rule which controlled the decisions of the cases above referred to has not been applied to the taking of lands by private, *or merely quasi-public* corporations in the absence of an express statute authorizing the appropriation of the fee simple. *Indianapolis etc. R. W. Co. v. Rayl*, 69 Ind. 424; *Prather v. Western Union Tel. Co.*, 89 Ind. 501. The doctrine generally accepted is, that the right acquired by the power of eminent domain extends only to an easement in the land taken, unless the statute plainly provides for the acquisition of a larger interest. (Cases cited.)"

In the more recent case of *Indianapolis Water Co. v. Kingan & Co.*, 155 Ind. 476, 481, 58 N. E. 715, commenting on the *Burkhart* case, the court again said:

"On the second branch of the question, namely, what estate the board acquired for the state by appropriating property under their delegated power of eminent domain, the court on pages 376 to 386 decided in substance that section four of the act of 1835 was not repealed in terms, nor impliedly, by the act of 1836; that the acts were to be construed *in pari materia;* that, since section seventeen of the act of 1836 was silent as to the estate acquired by condemnation proceedings, the court would look to section four of the act of 1835; that, since section four provided that payment of the award of damages should 'vest the fee simple of the premises so appropriated in the state,' evidence that particular land was taken by the board under the power of eminent domain would establish title in fee simple absolute in the state and its grantees. This decision has been followed in *Nelson v. Fleming*, 56 Ind. 310; *Cromie v. Trustees etc.*, 71 Ind. 208; *City of Logansport v. Shirk*, 88 Ind. 563; *Brookville, etc. Co. v. Butler*, 91 Ind. 134; *Shirk v. Board, etc.*, 106 Ind. 573; *Frank v. Evansville, etc. R. Co.*, 111 Ind. 132; *Blair v. Kiger*, 111 Ind. 193; *Quick v. Taylor*, 113 Ind. 540; *Collett v. Board, etc.*, 119 Ind. 27, 4 L. R. A. 321; *Peoria, etc. R. Co. v. Attica, etc. R. Co.*, 154 Ind. 218. In all these cases except the last two, the court has expressed its reluctance in following the *Burkhart* decision, and has declared its unwillingness to extend the doctrine by construction beyond cases in which the state's grantee claims under the board's exercise of the power of eminent domain."

From these later expressions it is manifest the court in the earlier cases held title in fee simple had passed for the sole reason that the statute then under consideration explicitly directed that payment of damages should "vest the fee simple title of the premises so appropriated in the state." The Ohio case, *Malone v. Toledo, supra,* has since been explained and distinguished by the supreme court of that state. *McCombs v. Stewart*, 40 Ohio St. 647; *Vought v. Columbus etc. R. Co.*, 58 Ohio St. 123, 50 N. E. 442; *Miller v. Wisenberger*, 61

Ohio St. 561, 56 N. E. 454.   In the case last cited the court, at page 583, said:

"In the case of *Malone v. Toledo*, 34 Ohio St. 541; *State v. Railway Co.*, 53 Ohio St. 189; *State v. Snook*, 53 Ohio St. 521; and *State v. Griftner*, 61 Ohio St. 201, the canal commissioners entered upon, took possession of, and used the premises in question in those cases in the construction and operation of the canals, and thereby a fee to the land vested in the state. In the cases of *Corwin v. Corwin*, 12 Ohio St. 629; and *Vought v. Railway Co.*, 58 Ohio St. 123, the land had been acquired by private companies which obtained only an easement for canal purposes from the land owners, and thereafter the state acquired such private canals from such companies and made them parts of the canal system of the state, and thereafter abandoned them, and this court held in those cases that the state acquired only the easement held by the canal companies, and not a fee simple, for the reason that while the state had the power, under section 8 of the canal act, to enter upon, possess and use the lands for canal purposes, and thereby acquire a fee as against all who had any interest in the lands, yet as the former owners were out of possession and out of control and the private canal companies were in possession and control, the change from the canal companies to the state canal system was not of a character to call the attention of the former land owners to the fact that their reversion was being taken by the state, and would not give them a reasonable opportunity to make application for compensation for such reversion. This clearly appears in the *Corwin* case, and that case controlled the decision of the *Vought* case."

Our conclusion that the fee simple title will not vest in the condemning corporation in the absence of express statutory direction, and that it has not vested in respondent railway company in this action, is well sustained by authority. Cooley, Const. Lim. (7th ed.), p. 808; 10 Am. & Eng. Ency. Law (2d ed.), 1197, 1199; 15 Cyc. 1020, 1021; *Reed v. Board of Park Comr's*, 100 Minn. 167, 110 N. W. 1119; *Chambers v. Great Northern Power Co.*, 100 Minn. 214, 110 N. W. 1128; *Hudson & Manhattan R. Co. v. Wendel*, 193 N. Y. 166, 85 N. E. 1020; *Lyon v. McDonald*, 78 Tex. 71, 14 S.

W. 261, 9 L. R. A. 295; *Newton v. Manufacturer's R. Co.*, 115 Fed. 781; *Kansas Central R. Co. v. Allen*, 22 Kan. 285, 31 Am. Rep. 190.

Having reached the conclusion that the fee is still vested in respondents and that the railway company acquired an easement only, the next question presented is whether the use to which the railway company has devoted the property, and which is now being made of it by Benham & Griffith, is public. Respondents contend it is, citing *Grand Trunk R. Co. v. Richardson*, 91 U. S. 454; *Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co.*, 175 U. S. 91; *Gurney v. Minneapolis Union Elev. Co.*, 63 Minn. 70, 65 N. W. 136, 30 L. R. A. 534; *Michigan Cent. R. Co. v. Bullard*, 120 Mich. 416, 79 N. W. 635; *Abraham v. Oregon & C. R. Co.*, 41 Ore. 550, 69 Pac. 653. Without entering upon a review of these cases, we will state we do not find they sustain respondents' position, as none of them are similar to this action in facts involved or statutes considered. In *Healy Lumber Co. v. Morris*, 33 Wash. 490, 499, 74 Pac. 681, 99 Am. St. 964, 63 L. R. A. 820, we said:

"Many of the cases cited by the appellant have no application to this case, for the reason that they are from states having constitutions with different provisions from ours on the subject of eminent domain. An examination of all the different constitutions in the Union shows that only two other states, viz., Colorado and Missouri, have the provision of our constitution that 'whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question and determined as such, without regard to any legislative assertion that the use is public.' That fact eliminates from the discussion in this case all that line of cases which hold that the fact that the legislature has either pronounced a certain thing a public use, or has so indicated by its enactment, by conferring the right of eminent domain, ought to have great weight with the court in construing the constitutionality of the act; because our constitution has expressly negatived any such idea; evidently deeming it nec-

essary to place a restriction upon legislative sentiment in this respect.    So that, under the provision of our constitution, the court is untrampled by any consideration due to legislative assertion or enactment."

It is therefore manifest that decisions from other states, which do not have our constitutional provision and in which legislatures have by statute declared various purposes to be public uses, while worthy of careful consideration, cannot be regarded as necessarily controlling in this jurisdiction, where the question whether the contemplated use be really public is judicial.

The complaint alleges that Benham & Griffith Company is occupying the land as a wholesale grocer; that it has no other office or place of business; and that it is in possession under a twenty-five year lease from the railway company.    It cannot be seriously argued that a wholesale grocery business conducted by a private corporation is a public use, even though the property occupied has been condemned by a railway company for a public use and later improved with a building called a warehouse.    In *Healy Lumber Co. v. Morris, supra,* considering what use would be public, this court, after numerous citations of authority, at page 509, said:

"But from a consideration of all the authorities and from our own views on construction, we are of the opinion that the use under consideration must be either a use by the public, or by some agency which is quasi public, and not simply a use which may incidentally or indirectly promote the public interest or general prosperity of the state."

See, also, *State ex rel. Tacoma Industrial Co. v. White River Power Co.,* 39 Wash. 648, 82 Pac. 150, 2 L. R. A. (N. S.) 842.

In *State ex rel. Milwaukee Terminal R. Co. v. Superior Court,* 54 Wash. 365, 103 Pac. 469, 104 Pac. 175, the relator sought to condemn a strip of land belonging to the Great Northern Railway Company, and used by its lessee, the Bolcom Mills Company, a private corporation, for a

platform from which to load and ship freight upon the cars of the Great Northern Railway Company, and the Northern Pacific Railway Company. The contention was made that the property was thus devoted to a prior public use and could not be condemned. Passing upon the use of the strip thus made by the mill company, this court said:

"We will next consider whether the property sought to be appropriated is now devoted to a public use. We have seen that it is occupied by the loading platform of the Bolcom Mills Company. This company is in possession of tract No. 1 under a written lease, upon a yearly rental of $25, and terminable upon ten days' notice. It holds tract No. 2 under a verbal license, rent free. The respondent's tracks are in Shilshole avenue, and it has never used any part of the property in question. These platforms are used in loading the cars of the respondent company and of the Northern Pacific Railway Company when switched onto the mill track, with the products of the Bolcom Mills. If the property was a part of the right of way, yards, or terminals of the respondent, or directly used by it in the discharge of its duties as a common carrier, strong evidence of necessity upon the part of the relator would be required. It could not be successfully contended that the right of eminent domain could be exercised by a railroad company to condemn land for the purpose of leasing to patrons for their personal convenience. The fact that this strip of ground adds to the convenience of the mill company in loading its products upon the cars of respondent, does not make its use a public one. A use will not be classified as a public one merely because it may economize the handling of the products of a patron of a common carrier. The exemption from condemnation, if any, must rest upon the ground that the public interest would suffer by an appropriation of the property for the use of the relator for track purposes. If the property was owned by the mill company and used as it now is, it would not be claimed that it was serving a public use. The fact that it is owned by the railway company and used by the mill company cannot change a private use into a public one. It is the use to which the property is applied and not the ownership, that marks such use as public or private."

In deciding whether any particular use to which property may be devoted is public or private, courts must look not only to the character of the business to be transacted, but also to the duties which the law imposes upon those who are to conduct the same. If the public benefit is merely incidental and the use is optional with the owner, it will not be a public use authorizing an exercise of the power of eminent domain. There must be a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation which may prove beneficial or profitable to some portion of the public. A beneficial and profitable use is not necessarily public in contemplation of art. 1, § 16, of the constitution. The incorporation or establishment of mills, warehouses, factories, and kindred enterprises, is of public interest to a greater or less degree, and beneficial to the public welfare; but they do not necessarily come within the realm of that public use for which private property may be taken under the right of eminent domain. The terms "public interest" and "public use" are not synonymous. The true criterion by which to adjudge the character of the use is to determine whether the public may enjoy it by right or by permission only. The test is not what the corporation holding the land may elect to do, but what it may be required to do. No obligation rests upon the Benham & Griffith Company requiring it to conduct its business for the benefit of the public. It is engaged in a private enterprise, pure and simple, and the use to which it is now devoting the lots cannot, under the allegations of the complaint, be held public.

The railway company having acquired an easement only, and having devoted the lots to a private use, the further question is presented, whether appellants can maintain this action. Respondents insist they cannot, and that the state only can question the character of the use to which the property is being devoted. To sustain this contention, they cite *State ex rel. Hulme v. Grays Harbor & P. S. R. Co.*, 54 Wash. 530, 103 Pac. 809; *State ex rel. Harlan v. Centralia-*

*Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7
L. R. A. (N. S.) 198; *Reichling v. Covington Lumber Co.*,
*supra; People ex rel. Robinson v. Pittsburgh R. Co.*, 53 Cal.
694. The Washington citations do not support their posi-
tion. *Reichling v. Covington Lumber Co., supra*, has been
heretofore discussed. In *People ex rel. Robinson v. Pitts-*
*burgh R. Co., supra*, the court held the state could interpose
and correct an abuse of the right of eminent domain, but the
proceeding was one in which it was sought to annul the entire
franchise of a corporation. The right of a private individual
to protect his reversion was not involved. This court, in
*State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*,
citing the California case, said:

"The property does not become the private property of
the condemning corporation in the sense that it can appro-
priate it to uses of a private nature. It must use it for the
purposes for which it condemns it, or else submit to its re-
version at the suit of the state. *People v. Pittsburgh R. Co.*,
53 Cal. 694; 2 Lewis, Eminent Domain, § 594, *et seq.*"

This announcement was afterwards approved in *State ex*
*rel. Hulme v. Grays Harbor & P. S. R. Co., supra*. The state-
ment relative to action by the state was not necessary to the
decision of this court in either case. It did not exclude even
by inference the right of the original owner to protect his
reversion. The California case was one in which the entire
corporate franchise was sought to be forfeited. There is no
such attempt in this action, in which appellants sue for pos-
session and damages by reason of the trespass of the railroad
company and its lessee, and the devotion of the lots to a
private use after they have been condemned for a public use.
That this action can be maintained by the appellants see:
15 Cyc. 1026, and cases cited in note 63; 2 Mills, Eminent
Domain (3d ed.), § 861 (596); *Bell v. Mattoon Waterworks*
*& Reservoir Co.*, 245 Ill. 544, 92 N. E. 352, 137 Am. St. 338;
*Lyon v. McDonald, supra; Lance's Appeal*, 55 Pa. St. 16, 93
Am. Dec. 722; *Canton Co. v. Baltimore & O. R. Co.*, 99 Md.

202, 57 Atl. 637 ; *Miller v. Cincinnati L. & A. Elec. St. R. Co.*, 43 Ind. App. 540, 88 N. E. 102; *Pittsburg etc. R. Co. v. Bruce*, 102 Pa. St. 23.

The trial court erred in sustaining the demurrer. The allegations of the complaint are sufficient to require an answer. Respondents, however, will be entitled to plead and show, if such be the case, that the railway company has not permanently abandoned the lots to a private use. It may also, by denials and affirmative allegations, interpose any other available defense sufficient to meet the averments of the complaint. The question whether the use to which the lots has been devoted is public or private is a judicial one, to be finally determined when all the facts have been pleaded and shown. The complaint states a cause of action.

Reversed, and remanded with instructions to overrule the demurrer.

DUNBAR, C. J., PARKER, MOUNT, MORRIS, ELLIS, and FULLERTON, JJ., concur.