LAWSON et al. v. PORT ARTHUR CANAL & DOCK CO. et al.　(No. 6878.)*

(Court of Civil Appeals of Texas. Galveston. Nov. 26, 1915. Rehearing Denied April 20, 1916.)

1. EVIDENCE ☞471(26) — ADMISSIBILITY—FACTS OR OPINIONS.

In a proceeding for the partition of land, the testimony of officers of the defendant corporation that it owned the land in controversy was their opinion, and inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2171; Dec. Dig. ☞471(26).]

2. APPEAL AND ERROR ☞1054(1)—REVIEW—HARMLESS ERROR — OPINION EVIDENCE—COURT CASE.

In a proceeding for the partition of land, where witnesses of the defendant corporation were permitted to testify at the trial before the court without a jury to their opinion that the corporation owned the land, the error was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4185; Dec. Dig. ☞1054 (1).]

3. EVIDENCE ☞158(26) — BEST AND SECONDARY—TESTIMONY OF CORPORATE OFFICERS.

The active officers of a corporation, actually in charge of its affairs, may testify as to the acts, purposes, and intentions of the corporation and conduct of its business personally known to them; proof of such facts not being confined to the resolutions of its board of directors.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 507–513; Dec. Dig. ☞158(26).]

4. CANALS ☞22 — ACTS CONSTITUTING ABANDONMENT.

As a conveyance by the defendant canal corporation of its canal bed and a portion of an adjoining strip of land 600 feet wide held by them was not ipso facto an abandonment of the remainder, testimony of officers of the corpo-

ration, tending to show the intention of the corporation to use the land in the future for the purposes for which it was taken, and that there was no intention to abandon, was admissible, since upon a question of abandonment, as with fraud, a wide range should be allowed to evidence.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 29; Dec. Dig. ☞22.]

5. EMINENT DOMAIN ☞323—ABANDONMENT—EVIDENCE—SUFFICIENCY.

In a proceeding for the partition of land, evidence held to sustain a finding that the defendant canal corporation and its predecessors have been in continuous possession of the land since acquiring it, that the present intention of the company is to improve the land, and that there never has been any intention on the part of the defendant corporation to abandon.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 860–864; Dec. Dig. ☞323.]

6. EMINENT DOMAIN ☞324—ABANDONMENT—ACTS NECESSARY.

The intention of the defendant canal corporation to use land for different purposes from that for which it was condemned furnishes no grounds for forfeiture of the rights acquired by it under condemnation proceedings, since no such use has been made of it and the future unlawful use may be enjoined, or damages recovered therefor.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 857, 858; Dec. Dig. ☞324.]

7. EMINENT DOMAIN ☞10(1) — TITLE AND RIGHTS ACQUIRED—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, tit. 25, c. 16, art. 1250, subd. 6, concerning channel and dock corporations and enumerating their powers to condemn and claim land, the fact that the statute authorizes a channel and dock corporation to condemn a strip of land 700 feet wide on either side of the channel indicates that the right was given for purposes other than those absolutely necessary for the construction of the channel, and the construction of docks being necessary to the use and operation of the channel, the condemnation of the land for that purpose is authorized.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35, 37, 39–48; Dec. Dig. ☞10(1).]

8. EMINENT DOMAIN ☞324—ACTS INDICATING AN INTENTION TO ABANDON.

The transfer by a canal corporation of its title in a channel to the government of the United States in consideration of the promise of said government to maintain the channel and keep it open and free to commerce was not such an abandonment of its rights and duties to a channel and dock company as will work a forfeiture of its rights to use the land in controversy for the purposes for which it was lawfully condemned.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 857, 858; Dec. Dig. ☞324.]

9. APPEAL AND ERROR ☞843(2)—TITLE TO RIGHTS ACQUIRED—BASE FEE.

Since property taken by condemnation may be used only for the purposes for which it was taken, and the owners may use it until it is needed for this purpose, it is immaterial whether the right acquired by condemnation proceedings is called a "base fee" or an "easement."

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞843(2).]

Lane, J., dissenting.

Appeal from District Court, Jefferson County; John M. Conley, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

Suit for partition by Clara E. Gilliland and others against the Port Arthur Canal and Dock Company and others. The defendant Latham Davis was dismissed on his disclaimer. The defendant Wm. A. Lawson and others filed a cross-bill against defendant, Canal & Dock Company, and from that part of the judgment in its favor, cross-petitioners Wm. A. Lawson and others appeal. Affirmed.

H. O. Head, of Sherman, L. C. Kemp, Parker & Kennerly, and McDonald Meachum, all of Houston, and Minor & Minor, of Beaumont, for appellants. Lipscomb & Lipscomb, of Beaumont, Glass, Estes, King & Burford, of Texarkana, and S. W. Moore, of Kansas City, Mo., for appellees.

LANE, J. For a statement of this case we adopt the statement made by appellants in their brief, and which is agreed to by appellees as a substantially correct statement of the case, and is as follows:

This suit was originally filed in the district court of Jefferson county, Tex., by Clara E. Gilliland, Ella S. Gilliland, and W. H. Gilliland, individually, and the said W. H. Gilliland, executor of the last will and testament of J. J. F. Gilliland, against defendants, J. B. Watkins, the Port Arthur Canal & Dock Company, the Houston Oil Company of Texas, August F. Kountze, Latham Davis, and Wm. H. Lawson. Plaintiffs, in their petition, set out the respective interests of the parties, the value of the property, and prayed for the partition of two separate tracts of land commonly known as lot, or subdivision, No. 6 of the D. Gahagan league in Jefferson county, Tex., 66.9 acres of land; also lot, or subdivision, A of the D. Gahagan league of land in Jefferson county, Tex., containing 1,103 acres of land. The defendant Latham Davis was dismissed on his disclaimer. Defendants W. H. Lawson, A. F. Kountze, J. B. Watkins, and the Houston Oil Company of Texas filed their answers and a cross-bill against their codefendant, the Port Arthur Canal & Dock Company. In said cross-bills the said Watkins, Kountze, Lawson, and the Houston Oil Company alleged that the Port Arthur Canal & Dock Company claimed to own an easement over a tract of 22.7 acres across lot No. 6 in the Dennis Gahagan league and described said 22.7 acres by metes and bounds; that the said Port Arthur Canal & Dock Company also claimed to own an easement over a tract of 331.1 acres across lot A of the Dennis Gahagan league, and described said 331.1 acres by metes and bounds, and alleged that if any easement over and across said two tracts of land was acquired by the Channel Company, or at any time became vested in the Canal Company, the same had been acquired by condemnation for a specific purpose, to wit, canal purposes, and had been abandoned and forfeited, and that said tracts of land were no longer burdened with said easement, and alleged that after said Port Arthur Canal & Dock Company had acquired said easement or right of way, and said canal had been constructed, said Canal Company acknowledged and delivered to the United States a deed of conveyance to the canal bed; that the said Canal Company and its predecessor in title had acquired a strip of 600 feet in width on either side of the canal bed, and that said strip of 600 feet, lying on either side of the canal, had been abandoned by the Canal Company, had never been used, and was not now used, for canal purposes; that by the conveyance of the channel to the United States government the said Port Arthur Canal & Dock Company deprived itself of ownership and the right to operate said canal, and ever since said conveyance have ceased to own and operate said canal, and by reason of said act the right of way or easement in and to said tracts on either side of the canal bed had become extinguished by separating the easement over the bed from the easement or right of way on either side of the canal. Said defendants prayed that said easement or claim of the Port Arthur Canal & Dock Company be removed, and that the Port Arthur Canal & Dock Company be forever debarred from asserting or claiming any estate, interest, or easement in and to said tracts of land on either side of the ship canal, and that the parties be entitled to the respective interests claimed by them, and for partition.

The Port Arthur Canal & Dock Company answered, disclaiming any interest in and to the tract sued for in plaintiff's petition, except as to the tract of 22.7 acres extending across said lot No. 6 of the Dennis Gahagan league, and the tract of 331.1 acres extending across subdivision A of the Dennis Gahagan league, and alleged that as to said tracts that it is the owner of an undivided five-eighths interest therein, and that the plaintiff in this suit owns the other three-eighths interest, and denied that the defendants Watkins, Kountze, Lawson, and the Houston Oil Company of Texas have any interest therein, and averred that its predecessor in title, the Port Arthur Channel & Dock Company, acquired said land by entering upon and condemning it under the provisions of subdivision 6, art. 1250, c. 16, of the Revised Statutes of Texas, and averred that the interest acquired by the said condemnation proceedings was a fee-simple title, and said defendant the Port Arthur Canal & Dock Company alleged the transfer of said canal and 150 feet on the west side thereof to the United States government, and denied that they have abandoned or forfeited their interest in the remaining part of the land condemned, if the same be only an easement, and alleges that it has never abandoned, or entertained the intention of abandoning, said land. It admits that it has neither owned nor operated the canal since its transfer to the United States, but denies that said transfer had the effect of extinguishing plaintiff's easement to the two pieces of land 600 feet in width on either side of the canal bed, and prays that the last two tracts of land of 22.7 acres and 331.1 acres be partitioned among the plaintiffs and said defendant the Port Arthur Canal & Dock Company.

Defendants Lawson, Kountze, Watkins, and the Houston Oil Company of Texas filed their supplemental joint answer denying defendant Port Arthur Canal & Dock Company's interest in and to said tract on either side of the channel bed, and deny that any part of the right of way in excess of that part conveyed to the United States government is necessary for the purposes of the Canal & Dock Company as a canal or channel corporation, and deny that same will be used, or can be used, for the purposes for which it was acquired in said condemnation proceedings.

Upon the trial of said cause it was agreed that the Port Arthur Channel & Dock Company formerly owned the Port Arthur Ship Canal, or line of water communication, and also acquired by condemnation a right of way to an undivided five-eighths of the land on either side of the canal, being the tract of 331.1 acres and the tract of 22.7 acres, and that the Port Arthur Canal & Dock Company succeeded to all the rights and interest of the Port Arthur Channel & Dock Company; that on August 1, 1906, the Port Arthur Canal & Dock Company executed the deed to the United States to the canal bed and a strip of 150 feet on the westerly margin thereof; that the title to the two tracts of land is in the parties to this suit in the following proportions, except so far as affected by the condemnation proceedings of the

Channel & Dock Company: Three-eighths interest in the plaintiffs: two-eighths interest in the defendant J. B. Watkins; three-eighths interest in the defendants W. H. Lawson, A. F. Kountze, and the Houston Oil Company of Texas.

The case was tried before the court without a jury, and judgment was rendered, decreeing to the parties the respective interests claimed by them in and to said lot or subdivision 6 and lot, or subdivision, A of the Dennis Gahagan league, with the exception of the two tracts of 22.7 acres and 331.1 acres, excepting out of said two tracts the ship canal or line communication, and adjudged that as to said two tracts the Port Arthur Canal & Dock Company is entitled to and owns a special interest, constituting a base fee, corporeal in its nature, in an undivided five-eighths interest, and plaintiffs and defendants J. B. Watkins, Wm. H. Lawson, and August F. Kountze and the Houston Oil Company of Texas should have partition of the said two tracts, but the said Watkins, Lawson, and Kountze and the Houston Oil Company of Texas should have the right to their respective interests and shares in and to said two tracts only so long as said two tracts are not actually appropriated by the Port Arthur Canal & Dock Company to the use for which they were condemned; and commissioners were appointed to partition said land. Said defendants Watkins, Lawson, Kountze, and the Houston Oil Company of Texas have appealed from the judgment so rendered.

[1, 2] Appellants' assignments of error 1 to 8, inclusive, insist that the court erred in permitting J. A. Edson and C. E. Johnson, active officers of the Canal Company, to testify that the land in controversy was owned by said company, and as to the purpose for which the land was acquired, and further testify as to the intended use and future use of the land by said company, and as to the intention of the company to abandon said land, for the reason: First, that a statement of the witnesses that the land was owned by the company was but the opinion of the witnesses, and should not have been admitted; second, the intended uses of the land by the corporation and its purpose and intention as to abandonment could only be proven by some resolution of the directors of said corporation, and to permit said officers of said corporation to testify to such intentions and purposes was error; and, third, that such testimony does not tend to prove or disprove any issue in the suit.

Answering these propositions, in the order stated, we say:

First. The testimony of the witnesses that the corporation owned the land in controversy was but the opinion of the witnesses, and should not have been admitted, but as the case was tried before the court without a jury, we are of the opinion that such error was not reasonably calculated to cause an improper judgment in the case, nor did such error prevent, or in any manner affect, the proper presentation of the cause to this court, and therefore is no cause for a reversal of the judgment rendered.

[3] Second. The active officers of a corporation actually in charge of its affairs, such as Edson and Johnson are shown to be in the present case, may testify as to the acts, purposes, and intentions of such corporation in the conduct of its business personally known to them, and it is not the law that such acts, purposes, and intentions can only be proved by resolutions of its board of directors.

[4] Third. We think that so much of the testimony complained of as tended to show the intention of the corporation to use the land in the future for the purposes for which it was taken, and that there was no intention to abandon it was material, pertinent, and admissible testimony, and was properly admitted, unless it can be said that the conveyance of the canal to the United States was ipso facto an abandonment of such land, and as the majority of this court hold that such conveyance did not, of itself, as a matter of law, work an abandonment, we think the testimony admissible.

"Upon a question of abandonment, as upon a question of fraud, a wide range should be allowed as to evidence, for it is generally only from facts and circumstances that the truth is to be discovered, and both parties should be allowed to prove any fact or circumstance from which any aid for the solution of the question can be derived." 1 Cyc. 7.

[5] Appellants' ninth, tenth, and eleventh assignments insist that the trial court erred in his fourteenth finding of fact: First, in finding that the Canal Company and its predecessors have been in possession of the land in controversy all the time since acquiring same; second, in finding that it is the present purpose and intention of the company to improve the land as the trade and commercial development of the port requires and necessitates, for the reason that such finding is against the great weight and preponderance of the evidence to support it; and, third, in finding that:

"There never has been at any time any intention on the part of the defendant company to abandon any part of said land."

We think there was evidence sufficient to support the finding of the court complained of, and therefore overrule said assignments 9, 10, and 11.

[6] We now come to a more serious question, which is presented by appellants' twelfth and eighteenth assignments of error, each of which present practically the same substance, and are as follows: Twelfth assignment of error:

"The court erred in rendering judgment, refusing to cancel and hold null and void the easement or right of the appellee Port Arthur Canal & Dock Company to the land in controversy, for the reason that the evidence, if sufficient to show the intention of said appellee as to the future use of said land, showed conclusively that it was the intention to use said land for a purpose wholly different from that for which said land was condemned and for a purpose for which land cannot be condemned."

Eighteenth assignment of error:

"The court erred in its second conclusion of law in holding that under the facts there has been no positive and final abandonment of the property by appellee Port Arthur Canal & Dock Company, and that said appellee's rights in and to the land in controversy have not become ex-

tinguished, for the reason that the undisputed evidence shows that said appellee has conveyed the canal and placed it beyond its power to ever use the land for the purpose for which it was condemned, to wit, canal purposes."

These two assignments present what may be termed the "major proposition" and which, if decided in favor of appellant, would render useless a consideration of all other propositions presented, and would call for a reversal of the judgment of the trial court and the rendering of judgment for appellant by this court. Upon the questions presented by these assignments the majority of the court are of the opinion that, while the testimony indicates that some of the purposes for which the appellee intends to use the land are different from that for which it was condemned, no such use has yet been made of it; and, if it should be so used in the future, appellants may enjoin such unlawful use or recover damages therefor, and such intention on the part of appellee furnishes no ground for a forfeiture of the rights acquired by it under the condemnation proceedings.

[7] The majority are further of the opinion that under chapter 16, tit. 25, Vernon's Sayles' Statutes, under which appellee obtained its charter as a channel and dock company, it was authorized to condemn the land claimed by it in this suit, and could lawfully use it for both channel and dock purposes; that the construction of docks was necessary "for the use and purposes of such channel company" and the condemnation of the land by the company for such uses and purposes was expressly authorized by subdivision 6, art. 1250, of the statute before mentioned. The fact that the statute authorizes a channel and dock company to condemn a strip of land 700 feet on either side of the channel, in the opinion of the majority, shows that the right to condemn was given for other purposes than those absolutely necessary for the construction of the channel; and, the construction of docks being necessary to the use and operation of the channel, the condemnation of the land for such purpose must be held to have been authorized by the statute.

[8] The majority also hold that the transfer by the appellee company of its title in the channel to the government of the United States, in consideration of the agreement and promise of said government to maintain the channel and keep it open and free to commerce, was not such an abandonment of the rights and duties of appellee company as a channel and dock company as should work a forfeiture of its right to use the land in controversy for the purposes for which it was lawfully condemned. Upon this issue the majority agree with the following conclusions of the learned trial judge:

"The defendants Watkins et al. are only concerned in seeing that the lands which they formerly owned, and which were condemned by the Channel & Dock Company, are put to the uses for which they were condemned. So long as the lands are devoted to those very uses, there is no transgression of any of the complaining defendants' rights. Each one of these defendants received at the time of the condemnation such compensation as they were entitled to for the land taken from them. No different use of said land, other than that for which it is taken, is now being made, or has ever been made, by the defendant corporation or its predecessors, or by the United States government. There is not involved in this case the question of an additional servitude upon the land nor a devoting of its use to private purposes. There are no contingencies indicating the existence of an impossibility to use the land for the purpose for which it was condemned. There is no evidence whatever manifesting a 'positive' and a 'final' abandonment of the property by nonuser. * * * The sale of the canal to the government was not equivalent to an abandonment. Stripped of all of its refinements, Watkins et al. seek to reinvest themselves with their former estate, because the United States government, instead of the defendant Canal & Dock Company, operates and maintains the canal. * * * The theory of 'extinguishment' of the Canal & Dock Company's rights in and to the lands hangs upon the slender, delicate, and technical thread of the severance of the operation of the canal from the docks, the separation of the two projects, and the operation of each by two concerns, instead of by one. In this case the state authorized the taking of the land for the purposes to which it is being put. The federal government and the defendant company are carrying out those very purposes, and to a better advantage than contemplated when the state breathed the breath of corporate life into the defendant company. Who is operating the canal, and who is operating the docks, does not concern the defendants Watkins et al., so long as the character of the use of the lands is not affected."

The writer cannot concur with the majority of the court in holding:

First. That appellee Port Arthur Canal & Dock Company has or had authority, under the provisions of chapter 16, tit. 25, Vernon's Sayles' Statutes, to incorporate for the dual purposes of constructing and operating a "deep-water channel" and for the purpose of owning and operating "docks"; in other words, that there exists authority under said statute for the incorporation of a "canal & dock company."

Second. That there exists in this state authority for a channel corporation to take lands of the citizens by condemnation for the purpose of constructing a deep-water channel and for the further uses and purposes of such channel, including "docks," and after the construction of its channel convey the same to another corporation, place the operation and control of such channel in such other corporation, and thereafter continue to hold any portion of the lands so taken by condemnation, under the claim that it is still a channel corporation, and has the right to use such lands for dock purposes in aid of the canal conveyed.

Third. That the Port Arthur Canal & Dock Company did not abandon the land taken by it by condemnation by its conveyance of its deep-water channel to the United States government.

That the points of nonconcurrence may be more readily understood I here make the following propositions:

First. There is no authority conferred by

chapter 16, tit. 25, Vernon's Sayles' Statutes, for the incorporation of a "canal and dock company" nor for such company to take and hold the lands of another by condemnation for the uses of a "canal and dock company."

Second. Said statute confers no authority upon a "dock company" incorporated under said statute to either take or hold lands of another by condemnation for any purposes; but, on the contrary, article 1251 of said statutes, which is a section of the original act of 1887, and embracing all the articles of said chapter 16, expressly provides that such "dock company," as mentioned in the act, "shall never have the right or power to take or condemn to its use any private property without the free consent of the owner thereof."

Third. The conveyance by the Port Arthur Canal & Dock Company of its deed-water channel or canal to the United States government, thereby placing the ownership, operation, management, and exclusive control of such channel in said government, put it beyond the power of said Port Arthur Company to perform its corporate duties to the public, and it thereby abandoned the land taken by condemnation, as far as it was concerned, as a matter of law. It can no longer hold such lands so taken for the purposes of constructing or operating docks, wharves, warehouses, or for any other purpose. When it parted with its deep-water channel, the public enterprise or waterway which gave rise to its right and power to condemn and take the private property of another, it ceased to be a channel company, and converted itself, in fact, to a "dock company," which is forbidden to either take private property by condemnation or to hold the same, even if at first taken lawfully, in such manner. Calcasieu Lumber Co. v. Harris, 77 Tex. at page 23, 13 S. W. 453; Buford v. Smith, 2 Tex. Civ. App. 178, 21 S. W. 168; Railway Co. v. Sweat, 20 Tex. Civ. App. 543, 50 S. W. 162; Muhle v. Railway Co., 86 Tex. 464, 25 S. W. 607; Neitzel v. Spokane, 65 Wash. 100, 117 Pac. 864, 36 L. R. A. (N. S.) 529.

Fourth. The fact that appellants Lawson and others at the time of the condemnation received compensation for their land taken furnishes no reason in law why said land should not revert to them if the lands taken had, in law, been abandoned by said Port Arthur Canal & Dock Company. The trial court presents the affirmative of this proposition as a conclusion, and the same has been adopted by this court in the majority opinion.

Fifth. The Port Arthur Canal & Dock Company, by the conveyance of its deep-water channel or canal to the United States government, severed itself from the operation and control of the public enterprise or waterway which gave rise to its right and power to take private property by condemnation, and placed the exclusive ownership, operation, and control of said deep-water

channel or canal in the United States government, and it seems to the writer that it is absurd to insist that said Port Arthur Company may, after such sale, determine what portion of the 600 feet of land taken on each side of said channel is necessary for the uses of such channel. The United States government, now owning, operating, and controlling said canal alone is to determine how much of said land is necessary for the proper uses of such canal. The Port Arthur Company cannot hold these lands and dictate to the corporation owning and operating the deep-water channel as to what lands are necessary and may be used in the operation of said canal. See cases above cited.

Sixth. Two separate and distinct corporations, such as the Port Arthur Canal & Dock Company, which is now operating without owning or operating a canal, and the United States government, which purchased, and now owns, operates, and controls the canal constructed by the first company under its charter, cannot both hold, occupy, and use separate portions of private property taken by condemnation by one of said corporations. The law under which the Port Arthur Canal & Dock Company was incorporated is an Act of the Twentieth Legislature of 1887, pages 91 and 92, as amended by the Acts of the Twenty-Fourth Legislature of 1895, pages 184 and 185, and as amended by the Acts of the Twenty-Fifth Legislature of 1897, pages 19 and 20. This act as amended embraces articles 1249, 1250, 1251, and 1252, now forming that part of chapter 16, tit. 25, Vernon's Sayles' Statutes, referred to in the majority opinion. All these articles were embraced in one original act, passed by the Legislature as one act, and should be construed as a whole, with a view to harmonizing each section thereof with the others, if possible, and with that purpose in view I here copy so much of said articles together with the emergency clause attached to the amendment of 1897, as relate to the questions presented:

Article 1249. "This chapter shall embrace and include the creation of private corporations for the purpose of constructing, owning and operating deep-water channels from the waters of the Gulf of Mexico along and across any of the bays on the coast of this state to the mainland, for the purposes of navigation and transportation, and for the construction, owning and operating docks on the coast of this state for the protection and accommodation of ships, boats and all kinds of vessels for navigation and their cargoes."

Article 1250. "Every such channel corporation shall, in addition to the powers herein conferred, have power: * * *

"2. To take and hold such voluntary grant of real estate and other property as shall be made to it to aid in the construction and maintenance of its deep-water channel and works pertinent thereto. * * *

"6. To enter upon and condemn and appropriate any lands of any persons or corporation that may be necessary for the uses and purposes of such channel corporation; the damages for any property thus appropriated to be assessed and paid for in the same manner as provided by law in the case of railroads; provided, that no

damages shall be assessed against or paid by it for any portion of the route of the channel embraced within and covered by the waters of any bay or lake on the coast of this state, nor for any portion of any island belonging to the state that may be requisite and necessary to the construction and successful operation of its channel; and provided, further, that its right of way shall not be less than the actual width of its channel, and not more than seven hundred feet in width on each side of its channel; provided, that when the land sought to be condemned under this chapter is arable land, such right of way shall not extend further than six hundred feet on each side of the channel from the edge or boundary of said channel. * * *

"Whereas, there are now contracts let to build a large ship channel across the bay of Sabine Lake, and in the present condition of the law there is not right of way enough given to dump or pile the dirt taken from the bed of the channel, and in consequence the work on the building of said channel is stopped * * * renders it necessary and creates an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and this bill take effect on and from its passage, and it is so enacted."

Article 1251. "Every such dock corporation shall, in addition to the powers heretofore conferred, have power:

"1. To purchase, take and hold such land or real estate as shall be necessary for the construction and operation of its docks, approaches, entrances, moorings and ways; and the construction, use and enjoyment of such warehouses, stores and sheds as may be necessary to the receiving and discharging of freights, goods, wares and merchandise, and the proper protection and preservation thereof; provided, that no such dock corporation shall ever have right or power to take or condemn to its use any private property without the free consent of the owner thereof, expressed by a sufficient deed in writing." * * *

Article 1252. "Every such corporation shall, in addition to the powers heretofore conferred, have power:

"1. To purchase, take and hold such land or real estate as shall be necessary for the construction, maintenance and operation of its harbor approaches, entrances, and ways thereto, and the construction of wharves, piers and warehouses. * * *"

When the different sections of this act are construed together I am driven to the conclusion, from which there is no escape, that it was not the intention of the Legislature to authorize the incorporation of a "canal and dock company," but that it was its intention to authorize the incorporation of a deep-water channel company, with power to take such land by condemnation as in its judgment may be necessary for the construction of its channel and so much of the 600 or 700 feet on either side of its channel, as allowed by law, as is necessary to dump or pile the dirt taken from its channel. I am strengthened in this conclusion because in every instance where authority is given in the statute mentioned to take and hold land for purposes other than for the channel, it is provided that such taking shall be by voluntary grant. For instance, sections 2 and 1 of articles 1251 and 1252, respectively, of the original act of 1887 provides that land taken for purposes other than for right of way shall be by voluntary grant only, and section 1 of the amendment of 1897 provides

that every such channel corporation shall have power—

"to take and hold such voluntary grant of real estate and other property as shall be made to it to aid in the construction and maintenance of its deep water channel and works pertinent thereto."

Section 1, art. 1252, is as follows:

"Every such corporation * * * shall * * * have power to purchase, take and hold such land or real estate as shall be necessary for the construction and maintenance of its harbor approaches, entrances, and ways thereto, and the construction of wharves, piers and warehouses."

I am further strengthened in my conclusion by the emergency clause attached to the amendment of 1897, as follows:

"Whereas, there are now contracts let to build a large ship channel across the bay of Sabine Lake, and in the present condition of the law there is not right of way enough given to dump or pile the dirt taken from the bed of the channel, and in consequence the work of the building of said channel is stopped, * * * creates an emergency," etc.

The amendment provided for 600 or 700 feet, whereas the previous act provided for 150 feet only on each side of the channel as a right of way.

But if I am in error in the views just expressed, I cannot be in error in concluding that the words, "such channel corporation," in article 1250, and the words, "such dock corporation," in article 1251, refer back to the channel, to the "channel corporation," and the "dock corporation" mentioned in article 1249, as separate and distinct corporations, nor can I be in error in concluding that section 6, art. 1250, confers power upon such channel corporation only to take or hold land by condemnation, and that section 1, art. 1251, expressly forbids "such dock corporation" from taking or holding private property by condemnation for its uses. I think what has been said amply sustains my propositions Nos. 1 and 2.

As to propositions Nos. 3, 6, and 7, if it be conceded that a channel corporation may, by condemnation, take and hold private property for construction of docks, approaches, entrances, moorings, etc., and that the Port Arthur Canal & Dock Company, when first incorporated, had such rights and powers, by the sale of its deep-water channel to another it severed itself from the deep-water channel and ceased to be a deep-water channel corporation, became a dock corporation only, and by such sale it abandoned all the land condemned, and it reverted to its original owners, except such as passed to the vendee, who now owns, operates, and controls the public enterprise or waterway, which alone gave rise to such condemnation. A railway corporation has the power to condemn and take private property for its right of way and also for depot purposes, and for the construction of reservoirs, but will it be contended that if such corporation were to sell its railroad to another corporation, it could hold real estate taken by condemnation for depots and reservoirs, and continue to

use such lands for depot and reservoirs, in aid of the railroad which it had sold to such other corporation? Such contention to me seems absurd, but not more so than that the Port Arthur Canal & Dock Company can hold lands so taken by it in aid of a deep-water channel which it has sold to another, and which has passed beyond its control. The right to take private property by condemnation is one conferred upon a channel corporation, and the right to the use of land so taken must follow the principal object which gave rise to such right. The right to use lands taken by condemnation by a deep-water channel corporation for right of way may be used by said corporation in a manner consistent with the rights of navigation, and purposes necessary to a successful operation of its channel, but such uses are but incidents to the operation of the channel or canal; and, if held and used for such purposes, it must be held by the corporation operating and controlling the canal, the principal object which gave rise to the taking of such land. The great public waterway should not be left to the mercy of the Port Arthur Company, which is contending in this cause that it, and it alone, is prepared to determine just how much and in what manner the land taken for right of way shall be used in the operation of said canal. See cases above cited. In Ruling Case Law, sec. 19, page 468, it is said:

"The plain design of such case is to enable them to acquire what they require for the construction and successful operation of their canal, but nothing more. Consequently the title to the land taken remains in such cases in the owner, subject only to such servitude as the corporation has power to impose; and their power in this respect is limited, as a general rule, to such use of the land as may be reasonably necessary for a right of way."

In the case of Platt v. Pennsylvania Co., 43 Ohio St. 228, 1 N. E. 420, it is said:

" 'A railroad company has no authority to appropriate private land for the use of another company,' and 'there is no authority of law for several railroad companies to agree that one of their number shall proceed to appropriate land for the purpose of afterwards dividing it for the benefit of all; each company must proceed for itself.' "

And again:

"The power granted by statute to the condemning company was to take and hold an easement for 'its railroad'; and such statute must be strictly construed. And this is not a rule to be asserted and then disregarded, but to be rigidly enforced."

See, also, Calcasieu Lumber Co. v. Harris, 77 Tex. 23, 13 S. W. 453.

In Jessup v. Loucks, 55 Pa. 350, it is said:

'The corporation was created in this, as in other cases, to have the exclusive charge of its works in the nature of a trust. It alone could possess and control them to the exclusion of every subordinate or dependent interest."

And again:

"The fact of the abandonment by the corporation of its works [canal in the present case] was all the plaintiff had to concern himself about in this case. It is that fact which gives rise to the principle that abandoned easements return or revert to the original owners."

Washburne on Easements (3d Ed.) p. 670, says:

"The actual conveyance of its railroad bed by a railroad company of itself was an abandonment, and destroyed its easement."

It is only for the public good that private property is taken and appropriated to the uses of a corporation, and when taken or held, it must be done under the strict letter of the law. If a corporation asserts the right to take private property for its uses by virtue of the statute, such statute must clearly, by a reasonable construction, give such right, and if there be any doubt as to such right, it does not exist, and should be solved in favor of the party against whom such right is asserted. This, in any event, should be the law in such as the present case, where a corporation is asking that the law take the private property of a citizen for its uses without the consent of the owner. I think I can assert without controversy that no one will contend that had the Port Arthur Canal & Dock Company retained the ownership, operation, and control of the canal, that it could not have conveyed the land it took by condemnation to another corporation to be used by it for docks, wharves, warehouses, or for either of such purposes even if the vendee were to use it in aid of the canal, as said Port Arthur Company proposes to do in this case. It seems to me that such contention would be absurd. Nor do I think any one will contend that, although a railway company has power under the law to condemn and take land for depot and reservoir purposes, it could sell its railroad to another corporation, retain the land so taken in its own right, although it built a depot and reservoir thereon, and thereby gave aid to the corporation to which the railroad was sold. I think it would be readily conceded in such case that, as the exclusive control of the railroad, the construction and maintenance of which only would give rise to the right to condemn land for depot and reservoir purposes, had passed from the company seeking to hold the land, such land would revert to the one who holds the fee. If I am supported in this last proposition, how can it be held that the Port Arthur Canal & Dock Company has the right to hold the lands taken by it by condemnation, since it has sold its deep-water channel to another, who manages, operates, and controls the same to the exclusion of the said Port Arthur Company?

If the opinion of the majority of this court in this case is sustained, then two companies may be incorporated in this state as canal and dock companies, the purpose of one being to construct and operate a canal only, and the purpose of the other to construct and operate docks, wharves, warehouses, etc., named in articles 1251 and 1252, supra, then after such incorporation, agree that the one whose purpose is to operate a canal only shall condemn and take the land of another sufficient for the construction of its canal,

and 600 or 700 feet on each side of such canal, and after such taking convey so much of the land so taken to the other, whose purpose is to operate docks, wharves, etc., as is necessary for such purposes, or vice versa, and in this manner take private property and appropriate it to corporate purposes, and permit dock and wharf companies to do indirectly exactly what they are forbidden to do by article 1251, supra. I cannot believe that the Legislature intended to, or that it has made it possible for dock and wharf companies to, take private property for their purposes in this hocus pocus manner; for in said article 1251 a part and parcel of the one act of the Legislature under which appellee claims its right to take expressly forbids the taking of private property by such companies by condemnation, or otherwise than by purchase.

If the Legislature intended by the words, "to enter upon and condemn and appropriate any lands of any person or corporation that may be necessary for the uses and purposes of such channel corporation," in section 6, art. 1250, to confer power upon such corporation to take such land for the construction and maintenance of docks, approaches, entrances, wharves, piers, and warehouses, and other incidental "works appurtenant to said channel" as are named in section 2, art. 1250, and section 1, art. 1252, then it is inconceivable why said sections last mentioned were incorporated in the general act, which embraces all of said articles and sections.

Appellee alleged in its answer that it had conveyed its deep-water channel, known as the Port Arthur Ship Canal, to the United States of America, together with 150 feet of land along the west side of said canal, and that said canal is now the property of said government. From what I have already said it is clear that I think such answer confesses an abandonment of so much of the land taken by condemnation as did not pass to the government with and as an appurtenant to the canal, and I, therefore, think the trial court erred in not rendering judgment for appellants upon the petition and answer, and that upon his failure to so render judgment on said petition and answer he should have rendered judgment upon the undisputed facts, which, in my judgment, show such acts on the part of the appellee as constitutes an abandonment of the land in question, as a matter of law, even if it be conceded that it ever had any rights thereto, in the first instance. I am therefore of the opinion that the judgment of the lower court should be reversed, and judgment be here rendered for appellants, and, so believing, I cannot concur with the majority opinion which affirms the judgment rendered for appellee in the court below.

[9] The thirteenth and fourteenth assignments insist that the trial court erred in concluding and holding that appellee acquired a base fee, and more than an easement, in the land taken by condemnation. We overrule the contention presented by said assignments. The legal effect of the court's holding is that appellee acquired the use of the land taken for the purposes for which it was taken, only, that it held no greater title thereto, and that appellants had the right to use the same until appellee required its use for the purposes of its business. It is immaterial, therefore, whether appellee's right in the land be termed a "base fee" or an "easement."

What has been said under the twelfth and eighteenth assignments answers and sufficiently disposes of the remaining assignments, and they are therefore overruled.

It being the conclusion of the majority of this court that no such error has been committed in the trial of this case as should cause a reversal of the judgment rendered by the trial court, such judgment is by this court affirmed.

Affirmed.

LANE, J., dissents.

